**Kerry J. Shepherd, OSB #944343**
KerryShepherd@MarkowitzHerbold.com
**Molly K. Honoré, OSB #125250**
MollyHonore@MarkowitzHerbold.com
**Jermaine F. Brown, OSB #073415**
JermaineBrown@MarkowitzHerbold.com
MARKOWITZ HERBOLD PC
1455 SW Broadway, Suite 1900
Portland, OR 97201
Telephone: (503) 295-3085
Fax: (503) 323-9105

    Special Assistant Attorneys General for Defendants
    Additional Counsel of Record Listed on Signature Page

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PENDLETON DIVISION

| | |
|---|---|
| TYLER GARDNER; 1,700 JOHN DOES and all others similarly situated,<br>                      Plaintiffs,<br>   v.<br>KATE BROWN, Governor of Oregon; COLETTE S. PETERS, Director of Oregon Department of Corrections; OREGON HEALTH AUTHORITY; and JOHN DOES 1-100,<br>                      Defendants. | Case No. 2:21-cv-01256-SB<br><br>**DEFENDANTS' MOTION TO DISMISS** |

Defendants Governor Kate Brown, Director Colette Peters, and Oregon Health Authority ("Defendants") hereby move to dismiss plaintiff Tyler Gardner's ("Gardner") complaint pursuant to FRCP 12(b)(6).

Page 1 -   **DEFENDANTS' MOTION TO DISMISS**

## LOCAL RULE 7-1 CERTIFICATION

Counsel for Defendants certifies that Gardner is an adult in the custody of the Oregon Department of Corrections ("ODOC") and that he is not represented by counsel in this matter.

## BACKGROUND

### I.     Gardner's complaint.

Gardner, an adult in custody ("AIC") of ODOC, brings claims under 42 U.S.C. § 1983 against Defendants, alleging violations of the First, Eighth, and Fourteenth Amendment rights of a class of incarcerated people.  (*See generally* Class Action Allegation Complaint ("Compl.") at 1, Dkt. 2.)  Gardner also alleges that Defendants have violated the Religious Land Use and Institutionalized Persons Act ("RLUIPA").  (Compl. at 15-16.)  Gardner's wide-ranging complaint alleges that Defendants have been deliberately indifferent to the risks posed by COVID-19 by, among other things, failing to construct plexiglass barriers in certain locations, confining AICs in dormitories that lack proper ventilation and that do not allow for social distancing, failing to maintain constitutionally adequate medical and mental health facilities with proper levels of staffing, failing to treat COVID-19 or provide testing for COVID-19 antibodies, and requiring AICs to wear masks.  (*Id*. at 2-12.)  According to Gardner, as a result of these failures, Defendants have "caused Plaintiffs to be afflicted with depression, anxiety, fear, mental and emotional breakdowns, suicide attempts and continuations, and other psychological trauma." (*Id*. at 13.)

Gardner also contends that Defendants: (1) violated the Equal Protection Clause of the Fourteenth Amendment by requiring COVID-19 vaccinated AICs to wear masks when nonincarcerated, COVID-19-vaccinated individuals were not required to do so; (2) violated the RLUIPA by suspending religious services and practices for more than one year; (3) violated the

Fourteenth Amendment by requiring AICs to wear masks; and (4) violated AICs' religious rights by requiring mask wearing. (*Id.* at 13-20.)

As a result of those claims, Gardner seeks "compensatory and punitive damages" against Defendants for either $50 or $100 million and an injunction requiring Defendants to (1) construct and adequately staff a medical and mental health facility at Eastern Oregon Correctional Institution ("EOCI"); and (2) place a population cap on each housing unit at EOCI. (*Id.* at 21.)

## LEGAL STANDARD

A motion to dismiss under FRCP 12(b)(6) tests the sufficiency of the claims. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). When evaluating the sufficiency of a complaint's factual allegations, the court must accept all material facts alleged in the complaint as true and construe them in the light most favorable to the non-moving party. *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012). A motion to dismiss under Rule 12(b)(6) will be granted if a plaintiff alleges the "grounds" of their "entitlement to relief" with nothing "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)[.]" *Id.* (citations and footnote omitted).

To survive a motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). A plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In other words, a complaint must state a plausible claim for relief and contain "well-pleaded facts" that "permit the court to infer more than the mere possibility of misconduct[.]" *Id.* at 679. Although pro se pleadings are to be liberally construed, a plaintiff

Page 3 -   DEFENDANTS' MOTION TO DISMISS

still must present factual allegations sufficient to state a plausible claim for relief.  *Hebbe v. Pliler*, 627 F.3d 338, 341-42 (9th Cir. 2010).

## ARGUMENT

**I.    Gardner's class action allegations must be dismissed.**

To the extent that Gardner's complaint seeks to assert a class action, it must be dismissed. A pro se plaintiff may not represent a class in a class action.  *White v. Green*, 310 F. App'x 159, at *1 (9th Cir. 2009) (mem.); *Simon v. Hartford Life, Inc.*, 546 F.3d 661, 664 (9th Cir. 2008) ("courts have routinely adhered to the general rule prohibiting pro se plaintiffs from pursuing claims on behalf of others in a representative capacity"); *Aguilar v. Safeway Stores, Inc.*, No. 6:18-CV-1786-MC, 2019 WL 5541245, at *1 (D. Or. Oct. 25, 2019).  *See also* FRCP 23(a)(4) (requiring a class representative to be able to "fairly and adequately protect the interests of the class"); *C.E. Pope Equity Tr. v. United States*, 818 F.2d 696, 697 (9th Cir. 1987) (holding that a pro se litigant may not appear as an attorney for others); *Oxendine v. Williams*, 509 F.2d 1405, 1407 (4th Cir. 1975) ("we consider the competence of a layman representing himself to be clearly too limited to allow him to risk the rights of others.").  And, Gardner would be precluded from maintaining a class action based on the facts alleged in the complaint even if he were to retain counsel because opt-out plaintiffs cannot maintain a separate, duplicative class action.  *See Wai Hoe Liew v. Cohen & Slamowitz, LLP*, 265 F. Supp. 3d 260, 275 (E.D.N.Y. 2017) ("If opt-out plaintiffs wish to pursue their individual claims, they must do so individually, and not as a resurrected class asserting claims arising from factual predicates identical to those asserted in the prior class action from which they opted out.").  Accordingly, Gardner's class action claims should be dismissed with prejudice.

II.   **Gardner's claims for monetary damages against Defendants fail for several reasons.**

   A.   **Gardner cannot seek monetary damages for the alleged Eighth Amendment violations because he has not alleged a physical injury.**

Gardner's complaint fails to state a claim for relief under the Eighth Amendment because it alleges purely emotional injuries. Under the Prison Litigation Reform Act ("PLRA"), prisoners may not bring a claim "for mental or emotional injury suffered while in custody without a prior showing of physical injury[.]" 42 U.S.C. § 1997e(e). Gardner alleges that Defendants' COVID-19 prevention efforts have caused AICs—presumably including himself—"depression, anxiety, fear, mental and emotional breakdowns, suicide attempts and continuations, and other psychological trauma." (*Id*. at 13.) However, Gardner does not allege any physical injury as a result of Defendants' COVID-19 prevention efforts. Assuming arguendo that contracting COVID-19 is a physical injury for the purposes of 42 U.S.C. § 1997e(e), Gardner does not even allege that. Accordingly, Gardner's claims for damages based on the alleged violations of his Eighth Amendment rights fails and should be dismissed.

   B.   **Gardner has not alleged any personal involvement by the individual Defendants in the alleged constitutional violations.**

To the extent that Gardner brings claims against Governor Brown and Director Peters in their individual capacities, those claims should be dismissed because he has not alleged how those Defendants were involved in the alleged constitutional violations. A person deprives another of a constitutional right within the meaning of § 1983 if they do an affirmative act, participate in another's affirmative act, or fail to perform an act that they were legally required to perform. *Preschooler II v. Clark Cnty. Sch. Bd. of Trs.*, 473 F.3d 1175, 1183 (9th Cir. 2007). Gardner's complaint does not allege what any of the individual Defendants did or did not do that resulted in the alleged deprivations of his constitutional rights. Absent any allegations showing their personal involvement in the facts alleged by Gardner, they should be dismissed. *Churchill*

*v. Wilson*, 968 F.2d 1220, at *2 (9th Cir. 1992) (mem.) ("Liability under section 1983 . . . arises only upon a showing of personal involvement by the defendant in the alleged constitutional violations[.]").

  **C.** **To the extent that Gardner seeks monetary damages from Oregon Health Authority ("OHA") for any of the alleged violations of his constitutional rights, those claims are barred by the Eleventh Amendment, and OHA is not a "person" under § 1983.**

Gardner's claims against OHA under § 1983 must be dismissed for two reasons. First, Gardner's damages claims against OHA must be dismissed because OHA is immune from suit under § 1983. "Eleventh Amendment immunity extends beyond the state itself" to arms of the state. *Breck v. Doyle*, 796 F. App'x 333, 336 (9th Cir. 2019). OHA, as a state agency, is immune from suit. *Oracle Am., Inc. v. Oregon Health Ins. Exch. Corp.*, 145 F. Supp. 3d 1018, 1038 (D. Or. 2015) (granting the state's motion for summary judgment because OHA was not subject to suit for damages in federal court). OHA is thus immune from suit for damages and should be dismissed with prejudice.

Second, OHA is not a "person" who can be held liable under § 1983. Section 1983 provides that: "Every person who [under color of state law] . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any [constitutional] rights . . . shall be liable to the injured party in an action at law[.]" Under § 1983, a "person" does not include a state or a state agency. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 64-65 (1989) (a state is not a person under § 1983); *Maldonado v. Harris*, 370 F.3d 945, 951 (9th Cir. 2004) (a state agency is not a person within the meaning of § 1983). As a result, Gardner's § 1983 claim against OHA should be dismissed with prejudice.

**D.     Gardner's request for monetary damages from Governor Brown and Director Peters for claims against them in their official capacities must be dismissed because they are immune from suit under the Eleventh Amendment.**

Gardner's claims against individual Defendants acting in their official capacities must also be dismissed because they are entitled to Eleventh Amendment immunity. The Eleventh Amendment bars § 1983 damages claims against state officials acting in their official capacities. *Flint v. Dennison*, 488 F.3d 816, 824-25 (9th Cir. 2007). To the extent that Gardner seeks monetary damages from Defendants Governor Brown and Director Peters for their acts or omissions while acting in their official capacities, those claims are barred and must be dismissed with prejudice.

**E.     To the extent that Gardner seeks damages under RLUIPA, the claim must be dismissed because he is not entitled to damages under the statute.**

To the extent that Gardner seeks damages for Defendants' alleged violation of the RLUIPA, he fails to state a plausible claim against Defendants. Defendants are immune from liability for damages under RLUIPA because they are entitled to sovereign immunity. *Sossamon v. Texas*, 563 U.S. 277, 285 (2011) (holding that RLUIPA's authorization of "appropriate relief" did not "clearly and unambiguously waive sovereign immunity to private suits for damages") (citation omitted); *Jones v. Slade*, 23 F.4th 1124, 1140 n.4 (9th Cir. 2022) (monetary damages are not available against prison officials acting in their individual capacities); *Alvarez v. Hill*, 667 F.3d 1061, 1063 (9th Cir. 2012) (affirming district court's dismissal of claims for money damages against ODOC officials acting in their official capacities). Instead, a "RLUIPA plaintiff may only sue defendants in their official capacities for prospective injunctive relief." *Jones*, 23 F.4th at 1140 n.4 (citing *Wood v. Yordy*, 753 F.3d 899, 904 (9th Cir. 2014)). Gardner's complaint seeks no injunctive or declaratory relief relating to his complaints about burdens on

Page 7 -   **DEFENDANTS' MOTION TO DISMISS**

his ability to practice his religion.  (Compl. at 21.)  Accordingly, his RLUIPA claim should be dismissed.

### III.  Gardner's Eighth Amendment deliberate indifference claim should be dismissed because the facts alleged demonstrate that Defendants have not been deliberately indifferent to any of his serious medical needs.

The Court should dismiss Gardner's Eighth Amendment claim because the facts alleged in his complaint do not show that Defendants disregarded an excessive risk to his safety.  *See Wilson v. Alvarez*, 694 Fed. App'x 497, 498 (9th Cir. 2017) (affirming dismissal of complaint where the plaintiff failed to allege facts showing deliberate indifference to safety).  Indeed, the complaint details the steps that Defendants have taken to protect Gardner's safety and alleges that Gardner believes that others should have been taken.  Although the complaint faults Defendants for failing to construct plexiglass barriers in some locations (Compl. at 5-6), it acknowledges that Defendants have taken other steps to protect AICs, including "impos[ing] contact restrictions, mask mandates, no sharing [of] food, and keep[ing AICs and] visitors behind plexiglass" (*id.* at 5).  These steps are inconsistent with a lack of deliberate indifference.  *Cf. Mork v. Russell*, No. 3:21-cv-00077-MMD-WGC, 2021 WL 5862746, at *7 (D. Nev. Sept. 23, 2021) (the plaintiff stated a claim where he alleged that the prison official had failed to impose a mask mandate until all AICs had become ill with COVID-19 and the official subsequently lifted mask mandate after COVID-19 outbreak).[1]  Similarly, although Gardner alleges that Defendants have confined AICs in their dormitories, that practice appears to be consistent with an effort to restrict movement and eliminate contact between AICs from different units, which is a step that courts have found not to be deliberately indifferent in circumstances where social distancing is difficult.  *See Plata v. Newsom*, 445 F. Supp. 3d 557, 563-64 (N.D. Cal. 2020).  Additionally,

---

[1] Notably, Gardner also faults Defendants for enforcing a mask mandate.

Page 8 -   DEFENDANTS' MOTION TO DISMISS

although Gardner faults Defendants for allegedly failing to provide antibody testing to allow him to evaluate whether to accept a COVID-19 vaccine or rely on so-called natural immunity, he implicitly acknowledges that Defendants have made the COVID-19 vaccine available to him. A difference of opinion between plaintiff and prison officials about the appropriate course of protecting prisoners from COVID-19 cannot support a finding of deliberate indifference. *See Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996) (holding a difference in opinion between the physician and the prisoner concerning the appropriate course of treatment does not amount to deliberate indifference to serious medical needs).

More importantly, even if the facts alleged by Gardner could establish Defendants' deliberate indifference to his serious medical needs, he has failed to allege any causal connection between deliberate indifference and any harm suffered by him. Deliberate indifference requires a purposeful act or failure to respond *and* harm caused by the act or failure to respond. *Shank v. Corizon Health Servs.*, 692 F. App'x 414, 415 (9th Cir. 2017) (citing *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006)). Gardner's complaint contains no allegations to demonstrate that the presence or absence of plexiglass barriers, masks, social distancing, using shared workspaces, efforts to reduce the prison population, or sufficient doctors, other medical staff, medical equipment, and COVID testing caused him any physical harm; instead, it alleges only a risk of harm. (*See, e.g.*, Compl. at 9 (alleging a lack of adequate ventilation subjected plaintiff to "a heightened risk of COVID-19 or variants").) In fact, Gardner alleges that the cause of the only harm he suffered, "psychological trauma-depression, despair, anxiety, fear . . . [and] suicide," was due to Defendants' "restriction of outside activities, visitation, and communication with family and friends," not by Defendants' deliberate indifference to any serious medical need. (Compl. at 10.) Consequently, Gardner's Eighth Amendment claim should be dismissed.

**Page 9 -   DEFENDANTS' MOTION TO DISMISS**

**IV.    Gardner's emotional distress claim fails because he has not alleged an objectively serious medical need for an antibody test.**

Gardner's claim that he has been deprived of his constitutional rights by the Defendants' alleged failure to provide him with a COVID-19 antibody test also fails because he has not identified an objectively serious medical need for such a test. COVID-19 antibody tests demonstrate whether a person has previously contracted the disease. *See Gayle v. Mead*, No. 20-21553-CIV-COOKE/GOODMAN, 2020 WL 3041326, at *18 n.39 (S.D. Fla. June 6, 2020) ("[S]ince the introduction of COVID-19, experts have developed antibody tests which effectively demonstrate whether an individual ever contracted the disease in the past."). The Eighth Amendment prohibits deliberate indifference to a serious medical need. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). "A medical need is serious if failure to treat it will result in significant injury or the unnecessary and wanton infliction of pain." *Peralta v. Dillard*, 744 F.3d 1076, 1081 (9th Cir. 2014) (cleaned up). Gardner does not explain how Defendants' alleged failure to test him for COVID-19 antibodies is relevant to any of his medical needs or rises to the level of causing "significant injury" or "unnecessary and wanton infliction of pain." *Id.* Absent a showing of a serious medical need, Gardner's claim concerning Defendants' failure to test him for COVID-19 antibodies fails to state a claim and should be dismissed. *See Maney v. Brown*, 464 F. Supp. 3d 1191, 1213 (D. Or. 2020) (declining to test prisoners for COVID-19 who did not demonstrate a serious medical need did not violate Eighth Amendment).

**V.    Gardner cannot state a plausible Equal Protection claim because incarcerated persons are not a suspect class.**

Gardner's contention that Defendants violated his constitutional rights by requiring vaccinated AICs to wear masks even while vaccinated, un-incarcerated persons were not required to wear masks fails for at least two reasons. First, AICs are not members of a suspect class who can bring a cognizable claim under the Equal Protection Clause. *See United States v.*

*Whitlock*, 639 F.3d 935, 941 (9th Cir. 2011) (prisoners and persons convicted of crimes are not suspect classes entitled to equal protection under the Fourteenth Amendment) (citations omitted). Second, even if Gardner could bring such a claim, he has not alleged that he received a COVID-19 vaccination. As a result, the Court should dismiss Gardner's Equal Protection claim.

## VI.     The Fourteenth Amendment does not guarantee Gardner the right to avoid a requirement to wear a mask.

Gardner's Fourteenth Amendment claim must be dismissed because there is no constitutional right to avoid a requirement to wear a mask. A claim under 42 U.S.C. § 1983 is cognizable only if the defendant's conduct deprived the plaintiff of a constitutional right. *Haygood v. Younger*, 769 F.2d 1350, 1354 (9th Cir. 1985) (en banc). The Fourteenth Amendment provides that a state may not make or enforce a law that abridges a citizen's privileges or immunities or deprive a citizen of life, liberty, or property, without due process of law. U.S. Const. amend. XIV § 1. Gardner's complaint contains no allegations that he was deprived of his life, any liberty interest he was entitled to, or any property. To the extent that Gardner contends that the Fourteenth Amendment guarantees him a fundamental right to not be required to wear a mask, courts have resoundingly rejected that argument. *See, e.g.*, *Health Freedom Def. Fund, Inc. v. City of Hailey, Idaho*, 590 F. Supp. 3d 1253, 1266 (D. Idaho 2022) (observing that "[n]umerous courts have . . . found that while there is a fundamental right to medical autonomy, mask-mandates are not a form of medical treatment that triggers a fundamental liberty interest" and collecting cases); *Gunter v. N. Wasco Cnty. Sch. Dist. Bd. of Educ.*, 577 F. Supp. 3d 1141, 1157 (D. Or. 2021) (concluding that plaintiffs challenging a mask mandate in public schools had failed to allege a violation of their fundamental rights). Garner's complaint also fails to allege that Defendants violated the Privileges and Immunities Clause or

Equal Protection Clause by requiring him to wear a mask. Gardner's Fourteenth Amendment claim should thus be dismissed.

**VII.   Gardner's First Amendment claims should be dismissed because he has not alleged a cognizable claim for violations of those rights.**

In his fifth claim, Gardner alleges that Defendants' enforcement of mask mandates violated his rights to be free from religious, viewpoint, and political discrimination, all of which he contends are protected by the Free Exercise Clause of the First Amendment. (Compl. at 19.) Gardner's claim fails for multiple reasons.

First, to the extent that Gardner contends that the enforcement of a mask mandate is religious discrimination, he does not allege any facts that show that adherence to or rejection of the use of face masks is part of any religious practice, much less any facts that show that his particular religious beliefs compel rejection of the use of face masks. He also fails to allege that wearing a mask created a substantial burden on his exercise of his religion. Because Gardner has not made those allegations, he cannot show that enforcement of mask mandates amounts to religious discrimination. *See Moore v. Volume Servs., Inc.*, No. 21-00493 SOM-KJM, 2022 WL 2307739, at *6 (D. Haw. June 27, 2022) (dismissing the plaintiff's religious discrimination claim because she had not alleged any facts concerning her religious beliefs); *Denis v. Ige*, 538 F. Supp. 3d 1063, 1076 (D. Haw. 2021) (dismissing complaint that failed to "describe the tenets of that religion or explain how the Mask Mandates affect any religious practice" for failure to state a claim).

Second, to the extent that Gardner alleges that wearing a mask required him to engage in express conduct that he disagrees with, courts have repeatedly held that the act of wearing (or not wearing) a mask is not inherently expressive conduct and, thus, does not implicate the First Amendment. *See, e.g.*, *Zinman v. Nova Se. Univ., Inc.*, No. 21-CV-60723, 2021 WL 4025722, at

*13-14 (S.D. Fla. Aug. 30, 2021) *report and recommendation adopted sub nom.*, *Zinman v. Nova Se. Univ.*, No. 21-CIV-60723-RAR, 2021 WL 4226028 (S.D. Fla. Sept. 15, 2021) (explaining that, notwithstanding the plaintiff's personal views about the efficacy of mask wearing as a means of disease prevention, wearing a mask is not inherently expressive). Gardner's claim on this ground fails. Gardner's political discrimination claim fails for a similar reason. Wearing a mask does not necessarily cause others to believe that the wearer has a particular set of political beliefs. *See id.* (noting that "[i]n the context of COVID-19, wearing a mask does not evince an intent to send a [particular] message"). Accordingly, Gardner's First Amendment claims should be dismissed.

## CONCLUSION

Defendants respectfully request that the Court grant their motion and dismiss Gardner's complaint.

DATED this 20th day of March, 2023.

>
> ELLEN ROSENBLUM
> ATTORNEY GENERAL
> FOR THE STATE OF OREGON
>
> By:  *s/ April M. Stone*
> Kerry J. Shepherd, OSB #944343
> KerryShepherd@MarkowitzHerbold.com
> Molly K. Honoré, OSB #125250
> MollyHonore@MarkowitzHerbold.com
> Jermaine F. Brown, OSB #073415
> JermaineBrown@MarkowitzHerbold.com
> *Special Assistant Attorneys General for State Defendants*
>
> R. Kyle Busse, OSB #070994
> KyleBusse@MarkowitzHerbold.com
> Chad A. Naso, OSB #150310
> ChadNaso@MarkowitzHerbold.com
> April M. Stone, OSB #200937
> AprilStone@MarkowitzHerbold.com
> *Attorneys for Defendants*

## ATTORNEY CERTIFICATE OF SERVICE

I hereby certify that on March 20, 2023, I have made service of the foregoing **DEFENDANTS' MOTION TO DISMISS** on the party listed below in the manner indicated:

| | |
|---|---|
| **LEGAL MAIL**<br>Tyler Gardner<br>SID 18175548<br>Eastern Oregon Correctional Institution<br>2500 Westgate<br>Pendleton, OR  97801-9699<br>    *Pro se Plaintiff* | ☒ U.S. Mail<br>☐ Facsimile<br>☐ Hand Delivery<br>☐ Overnight Courier<br>☐ Email<br>☐ Electronically via USDC CM/ECF system |

DATED: March 20, 2023.

*s/ April M. Stone*
_____
April M. Stone, OSB #200937
*Attorney for Defendants*

CERTIFICATE OF SERVICE