IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| TYLER GARDNER; 1,700 JOHN DOES; and all others similarly situated,<br><br>              Plaintiffs,<br><br>    v.<br><br>KATE BROWN *et al.*,<br><br>              Defendants. | Case No. 2:21-cv-01256-SB<br><br>**FINDINGS AND RECOMMENDATION** |

**BECKERMAN, U.S. Magistrate Judge.**

Plaintiff Tyler Gardner ("Gardner"), a self-represented adult in custody ("AIC") of the Oregon Department of Corrections ("ODOC"), alleges claims against Oregon's former governor, Kate Brown ("Brown"), ODOC's former director, Colette Peters ("Peters"), the Oregon Health Authority ("OHA"), and 100 John Does (together, "Defendants") related to Defendants' response to the COVID-19 ("COVID") pandemic.

Now before the Court is Defendants' motion to dismiss Gardner's claims. The Court has jurisdiction over Gardner's claims pursuant to 28 U.S.C. §§ 1331 and 1367, but not all parties have consented to the jurisdiction of a magistrate judge under 28 U.S.C. § 636. For the reasons

PAGE 1 – FINDINGS AND RECOMMENDATION

that follow, the Court recommends that the district judge grant in part and deny in part Defendants' motion to dismiss.

## BACKGROUND[1]

Gardner is an AIC currently housed at the Eastern Oregon Correctional Institution ("EOCI"). Gardner filed various claims styled as a class action against Defendants based on Defendants' response to the COVID pandemic. (*See generally* Compl., ECF No. 2.)

Among other allegations, Gardner asserts that Defendants failed to construct plexiglass barriers around correctional staff stations, failed to limit contact and interaction between all persons within the institution, failed to maintain adequate medical and mental health facilities, failed to provide COVID treatment and to test for COVID antibodies, confined AICs in poorly ventilated areas for extended periods of time, and forced AICs to wear masks. (*Id.* at 2-3.)

Gardner further alleges that social distancing was impossible for AICs housed in small cells with bunkbeds. (*Id.* ¶¶ 32, 38-40.) Defendants canceled all outdoor activities. (*Id.* ¶ 33.) The poorly ventilated facility had "little airflow, air-duc[t]s scarcely cleaned, [and] filters seldom replaced[.]" (*Id.* ¶ 35.) Defendants "forced [Gardner] to work in tight crowded spaces under threat of segregation with nonvaccinated AICs, correctional staff, and volunteers," and "have done nothing to prevent correctional staff and volunteers from mingling together indoor[s] . . . in crowded areas[.]" (*Id.* ¶¶ 23-24.) Gardner alleges that Defendants "were aware that correctional staff and volunteer[s] continued to pose a greater risk to [Gardner] absent installing plexiglass barriers around their work stations." (*Id.* ¶ 21.) Further, Gardner asserts that studies have

---

[1] Gardner pleads these facts in his complaint, and the Court assumes they are true for the purpose of deciding this motion. *See Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010) (noting that when reviewing a motion to dismiss for failure to state a claim, a court must "accept as true all well-pleaded allegations of material fact, and construe them in the light most favorable to the non-moving party").

PAGE 2 – FINDINGS AND RECOMMENDATION

shown—and Defendants were aware—that indoor confinement for an extended period puts people at a heightened risk of contracting COVID. (*Id.* ¶¶ 31, 34.)

EOCI's medical facility occupied "one room," a "blood draw area located in [a] corner," and a 4-cell infirmary with no on-site doctors. (*Id.* ¶¶ 46-48.) Defendants denied AICs access to Food and Drug Administration "approved therapeutics" to treat the virus. (*Id.* ¶ 58.) AICs "were reluctant to report symptoms of COVID . . . in fear of being isolated, punished, and suffer[ing] alone without any treatment." (*Id.* ¶ 61.) Gardner alleges that as a result of these conditions of confinement, he was "exposed to and infected with COVID-19." (*Id.* ¶ 26.)

Gardner alleges that vaccinated AICs were forced to wear masks while non-incarcerated, vaccinated individuals no longer had to wear masks. (*Id.* at 14.) Finally, Gardner asserts that Defendants terminated all religious services, limiting religious practices for more than one year. (*Id.* at 15.)

As relief, Gardner seeks compensatory and punitive damages and a permanent injunction requiring Defendants to (1) build a medical and mental health facility at EOCI, (2) hire enough qualified medical and mental health staff to care for AICs, and (3) place a population cap on each housing unit at EOCI to maintain social distancing requirements. (*Id.* at 21.)

## LEGAL STANDARDS

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted). "The plausibility standard is not akin to a probability requirement, but it asks for more

than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Bell Atl. Corp.*, 550 U.S. at 556).

Self-represented litigants' "complaints are construed liberally and 'held to less stringent standards than formal pleadings drafted by lawyers.'" *Hoffman v. Preston*, 26 F.4th 1059, 1063 (9th Cir. 2022) (quoting *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010)); *see also Hebbe*, 627 F.3d at 342 ("*Iqbal* incorporated the *Twombly* pleading standard and *Twombly* did not alter courts' treatment of *pro se* filings[.]"). The court must "afford [a self-represented plaintiff] the benefit of any doubt." *Hoffman*, 26 F.4th at 1063 (quoting *Hebbe*, 627 F.3d at 342). "Unless it is absolutely clear that no amendment can cure the defect, . . . a [self-represented] litigant is entitled to notice of the complaint's deficiencies and an opportunity to amend prior to dismissal of the action." *Garity v. APWU Nat'l Labor Org.*, 828 F.3d 848, 854 (9th Cir. 2016) (quoting *Lucas v. Dep't of Corr.*, 66 F.3d 245, 248 (9th Cir. 1995)).

## DISCUSSION

Gardner alleges that Defendants violated (1) his First Amendment right to free exercise of religion by enforcing mask mandates; (2) his First Amendment right to free exercise of religion by terminating all religious services for more than one year; (3) his Eighth Amendment rights by failing adequately to respond to COVID; (4) his Fourteenth Amendment right to equal protection by requiring vaccinated AICs to wear masks when non-incarcerated, vaccinated individuals no longer had to wear masks; (5) his Fourteenth Amendment right to equal protection by discriminating against him based on his religion, viewpoint, or political affiliation by enforcing mask mandates; (6) his Fourteenth Amendment due process rights by enforcing a mask mandate; and (7) the Religious Land Use and Institutionalized Persons Act ("RLUIPA") by terminating all religious services for more than one year. (*See generally* Compl.) Defendants move for dismissal of Gardner's claims based on (1) Gardner's inability as a self-represented

litigant to represent a class; (2) Gardner's failure to allege sufficient facts to state a claim; and (3) Eleventh Amendment immunity. (Defs.' Mot. Dismiss ("Defs.' Mot.") at 4-13, ECF No. 31.)

## I.     CLASS ACTION ALLEGATIONS

Defendants argue that the Court should dismiss Gardner's class action allegations because Gardner, a self-represented AIC, may not represent a class in a class action. (Defs.' Mot. at 4.) Gardner asserts that he believed that the Court had already certified a class in this case. (Pl.'s Resp. Defs.' Mot. Dismiss at 3, ECF No. 38.)

Gardner styled his complaint as a class action, purporting to raise his claims on behalf of himself and 1,700 AIC John Does confined at EOCI. (Compl. at 2.) However, Gardner has not filed a motion for class certification, and the Court has not certified a class in this case. *See Baxter v. Palmigiano*, 425 U.S. 308, 310 n.1 (1976) (explaining that the district court erred by treating a suit brought by AICs on behalf of all AICs at the facility as a class action in the absence of "certification and identification of the class" pursuant to Federal Rules of Civil Procedure 23(c)(1) and 23(c)(3)).

As this Court previously cautioned (*see* Op. at 1 n.1, ECF No. 14), a self-represented plaintiff may not represent other plaintiffs in litigation. *See Johns v. Cnty. of San Diego*, 114 F.3d 874, 877 (9th Cir. 1997) ("[A] non-lawyer 'has no authority to appear as an attorney for others than himself.'" (quoting *C.E. Pope Equity Tr. v. United States*, 818 F.2d 696, 697 (9th Cir. 1966))). In addition, "it is well established that a layperson cannot ordinarily represent the interests of a class." *Hirt v. Jackson Cnty.*, No. 1:19-cv-00887-AC, 2020 WL 3104502, at *2 (D. Or. June 11, 2020) (citing *McShane v. United States*, 366 F.2d 286 (9th Cir. 1966)). "This rule becomes almost absolute when, as here, the putative class representative is incarcerated and proceeding *pro se*." *Id*. (citation omitted).

///

PAGE 5 – FINDINGS AND RECOMMENDATION

Because Gardner may not represent the interests of a class, the Court recommends that the district judge dismiss the 1,700 Plaintiff John Does and Gardner's class action allegations and allow Gardner to proceed with his claims only to the extent that he seeks relief for himself. *See White v. Geren*, 310 F. App'x 159, 160 (9th Cir. 2009) ("The district court properly dismissed [the plaintiff's] class action claims because [the plaintiff], proceeding *pro se*, was not an adequate class representative." (citing FED. R. CIV. P. 23(a)(4) and *McShane*, 366 F.2d at 288)); *Abel v. Alameda Cnty.*, No. 3:07-cv-03247-MJJ-PR, 2007 WL 3022252, at *1 (N.D. Cal. Oct. 13, 2007) ("*Pro se* prisoner plaintiffs may not bring class actions. They are not qualified to act as class representatives as they are unable to fairly represent and adequately protect the interests of the class.") (citations omitted).

## II.    INDIVIDUAL DEFENDANTS

### A.    Official Capacity

Defendants argue that Eleventh Amendment immunity bars any claim for damages against Brown and Peters in their official capacities and against the OHA. (Defs.' Mot. at 6-7.)

"[D]amages against the state are generally barred by the Eleventh Amendment[.]" *Applied Underwriters, Inc. v. Lara*, 37 F.4th 579, 598 (9th Cir. 2022), *cert. den.*, 143 S. Ct. 748 (2023). "The Eleventh Amendment bars suits against the State or its agencies . . . absent unequivocal consent by the state." *Romano v. Bible*, 169 F.3d 1182, 1185 (9th Cir. 1999) (citing *Pennhurst v. Halderman*, 465 U.S. 89, 100 (1984)). Section 1983 permits suit against "persons," which the U.S. Supreme Court has construed to mean "state officials sued in their individual capacities[.]" *Hafer v. Melo*, 502 U.S. 21, 23 (1991). "State agencies . . . are not 'persons' within the meaning of § 1983, and are therefore not amenable to suit under that statute." *Maldonado v. Harris*, 370 F.3d 945, 951 (9th Cir. 2004) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70 (1989)). Additionally, "damages claims against the individual defendants in their official

PAGE 6 – FINDINGS AND RECOMMENDATION

capacities are barred by the Eleventh Amendment." *Brown v. Or. Dep't of Corr.*, 751 F.3d 983, 989 (9th Cir. 2014).

Gardner does not and cannot dispute that the OHA is a state agency. Accordingly, the Court recommends that the district judge dismiss Gardner's claims for damages against the OHA. *See Kononen v. Or. Health Auth.*, No. 6:21-cv-00171-AA, 2021 WL 473728, at *2 (D. Or. Feb. 9, 2021) (dismissing complaint against the OHA that "does not assert any federal statutes abrogating Oregon's sovereign immunity, nor has the state waived its immunity").

Further, the Eleventh Amendment bars any claim for damages against Brown and Peters in their official capacities, and the district judge should dismiss those claims. *See Will*, 491 U.S. at 71.

### B.    Supervisory Liability

With respect to Gardner's claims against Brown and Peters in their individual capacities, Defendants generally argue that Gardner has failed to allege that Brown and Peters were personally involved in the alleged constitutional violations. (Defs.' Mot. at 5; Defs.' Reply Pl.'s Resp. Defs.' Mot. Dismiss at 2-4, ECF No. 39.)

A supervisor may be held liable under Section 1983 based on "either (1) [the supervisor's] personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011) (quoting *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989)). A supervisor need not be physically present or "directly and personally involved in the same way as are the individual officers who are on the scene inflicting constitutional injury." *Id.* at 1205 (quoting *Larez v. City of L.A.*, 946 F.2d 630, 645 (9th Cir.1991)).

Defendants argue that Gardner has failed to allege Brown's and Peters' personal involvement in any of the alleged constitutional claims. (Defs.' Mot. at 5.) The Court disagrees.

PAGE 7 – FINDINGS AND RECOMMENDATION

Gardner alleges that Brown was the governor of Oregon, issued an executive order declaring a statewide emergency in response to COVID, and issued additional executive orders restricting certain activities, including religious gatherings. (Compl. at 2-4.) Gardner also alleges that Peters oversaw ODOC and was responsible for "creating and enforcing policies." (*Id.* at 2.) With respect to Gardner's First Amendment claim based on the termination of religious services, Gardner further alleges that Brown and Peters "discontinued all religious services at EOCI," denied Gardner access to "worship," "bible studies, congregation, [and] communion," and "allowed for non religious programs to operate at EOCI." (*Id.* ¶¶ 100, 103.) With respect to Gardner's Eighth Amendment claim, Gardner asserts that Brown and Peters were involved in suspending visitation throughout ODOC, were aware of the ongoing risk that unvaccinated correctional staff posed to AICs, and knew of the risk of infection from confinement for extended periods of time. (*Id.* at 5-7.)

Accepting Gardner's allegations as true, drawing all reasonable inferences, and construing the complaint liberally, the Court concludes that Gardner has adequately pled sufficient facts to state claims for relief against Brown and Peters. The Court therefore recommends that the district judge deny Defendants' motion to dismiss Gardner's claims against Brown and Peters for failure to plead personal involvement. *See Hampton v. California*, No. 22-15481, 2023 WL 6406760, at *8-10 (9th Cir. Oct. 3, 2023) (concluding that the plaintiffs adequately pled that high level officials violated the Eighth Amendment in their response to COVID at San Quentin Prison); *Maney v. Brown*, No. 6:20-cv-00570-SB, 2021 WL 4449266, at *7 (D. Or. Sept. 28, 2021) (concluding that "Plaintiffs have alleged sufficient facts to suggest that a causal connection exists between Governor Brown and [the OHA Director]'s involvement in developing, overseeing, and authorizing ODOC's [COVID-related] policies and Plaintiffs'

PAGE 8 – FINDINGS AND RECOMMENDATION

alleged injuries, and that Defendants knew or reasonably should have known the consequences of those policies"); *Maney v. Brown*, No. 6:20-cv-00570-SB, 2020 WL 7364977, at *6 n.4 (D. Or. Dec. 15, 2020) (concluding that the plaintiffs sufficiently alleged the involvement of high-level officials in ODOC's COVID response); *see also Preschooler II v. Clark Cnty. Sch. Bd. of Trustees*, 479 F.3d 1175, 1182 (9th Cir. 2007) (concluding that the plaintiff's allegations that school officials were liable as a result of their inaction in training, supervising, and controlling a staff member were sufficiently specific to survive a motion to dismiss and explaining that the plaintiff "does not need to show with great specificity" the exact actions of each defendant at "this early stage of the proceedings"); *Fuller v. Amis*, No. 5:21-cv-00127-SSS-AS, 2023 WL 3822057, at *5 (C.D. Cal. Apr. 13, 2023) ("Plaintiff has pleaded sufficient allegations to state an Eighth Amendment claim against Defendant, at least with respect to Defendant's alleged role in confining Plaintiff in overcrowded dormitory housing among infected inmates despite his increased risk of serious harm from COVID-19"), *report and recommendation adopted*, 2023 WL 3819181 (C.D. Cal. June 2, 2023).

### III.    FIRST AMENDMENT

Gardner asserts that Defendants violated his right to free exercise of religion under the First Amendment by enforcing a mask mandate. (Compl. at 19.) Gardner also asserts that Defendants violated his right to free exercise of religion by terminating all religious services and restricting religious practices for more than one year. (*Id.* at 15.) Defendants only seek dismissal of Gardner's First Amendment claim based on Defendants' enforcement of a mask mandate. (Defs.' Mot. at 5, 12.)

Gardner asserts that Defendants violated his right to free exercise of religion by enforcing a mask mandate. (Compl. at 19.) Defendants argue that the Court should dismiss Gardner's First

PAGE 9 – FINDINGS AND RECOMMENDATION

Amendment claim based on mask mandates because Gardner has not alleged that he adheres to a religion that rejects the use of face masks. (Defs.' Mot. at 12.) The Court agrees.

"A person asserting a free exercise claim must show that the government action in question substantially burdens the person's practice of [that person's] religion." *Jones v. Williams*, 791 F.3d 1023, 1031 (9th Cir. 2015). To merit protection under the Free Exercise Clause, "[f]irst, the claimant's proffered belief must be sincerely held; . . . [s]econd, the claim must be rooted in religious belief, not in purely secular philosophical concerns." *Malik v. Brown*, 16 F.3d 330, 333 (9th Cir. 1994) (simplified), *supplemented*, 65 F.3d 148 (9th Cir. 1995).

Gardner alleges that the "First Amendment categorically prohibits government attempts to influence or impose unwanted ministers on religious groups" (Compl. ¶ 138), but Gardner does not explain how Defendants imposed "unwanted ministers." Neither does Gardner identify the tenets of his religion, allege that his sincerely held religious beliefs reject the use of face masks, nor describe how the mask mandate substantially burdens the practice of his religion. Gardner has failed to state a plausible claim for relief, and therefore the Court recommends that the district judge dismiss Gardner's First Amendment claim relating to the mask mandate. *See Schmidt v. City of Pasadena*, No. 2:21-cv-08769-JAK-JC, 2023 WL 4291440, at *8 (C.D. Cal. Mar. 8, 2023) ("These allegations do not explain which of Plaintiff's sincerely held religious beliefs conflict with a specific . . . duty."); *Denis v. Ige*, 538 F. Supp. 3d 1063, 1076 (D. Haw. 2021) ("[The plaintiff's] allegations do not permit the court to infer that the Mask Mandates place a substantial burden on the exercise of his religion. The Complaint does not even identify his religion. It certainly does not describe the tenets of that religion or explain how the Mask Mandates affect any religious practice.").

///

IV.     **EIGHTH AMENDMENT**

Gardner asserts that Defendants violated his Eighth Amendment rights in their response to COVID by failing to construct plexiglass barriers around correctional staff stations, failing to limit contact and interaction between all persons within the institution, failing to maintain adequate medical and mental health facilities, failing to provide COVID treatment and to test for COVID antibodies, confining AICs in poorly ventilated areas for extended periods of time, and forcing AICs to wear masks. (Compl. at 2-3.) As a result, Gardner was "exposed to and infected with COVID-19." (*Id.* ¶ 26.)

Defendants argue that even if Defendants did what Gardner alleges, the Court should dismiss Gardner's Eighth Amendment claim because "Defendants have taken other steps to protect AICs" from COVID, which is inconsistent with deliberate indifference. (Defs.' Mot. at 8.) As support, Defendants argue that a mere difference of medical opinion as to the appropriate course of treatment is insufficient to establish deliberate indifference. *See Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996)* (so stating). The Court finds that Gardner has adequately pled deliberate indifference, and it is premature at the pleading stage for the Court to evaluate the steps Defendants took to protect AICs during the pandemic.

Defendants also argue that Gardner has failed to allege any causal connection between Defendants' alleged deliberate indifference and any harm suffered. (Defs.' Mot. at 9.) To the contrary, Gardner has alleged that Defendants' deliberate indifference resulted in his exposure and infection with COVID. (Compl. ¶ 26.[2])

---

[2] For the same reason, the Court disagrees with Defendants' contention (Defs.' Mot. at 5) that Gardner has not alleged a physical injury and therefore cannot seek monetary damages in connection with his Eighth Amendment claim. *See Jones v. Pollard*, No. 3:21-cv-00162-MMA-RBM, 2022 WL 706926, at *10 (S.D. Cal. Mar. 9, 2022) ("Plaintiff alleges that he contracted COVID-19, suffered from chest pains, and racing heartbeats necessitating medication. This is sufficient at this stage to allege a physical injury that is more than *de minimis*.") (citation

PAGE 11 – FINDINGS AND RECOMMENDATION

For these reasons, the Court recommends that the district judge deny Defendants' motion to dismiss Gardner's Eighth Amendment claim. *See Nelson v. Allison*, No. 22-cv-00377-CAB-AHG, 2023 WL 5004487, at *12 (S.D. Cal. Aug. 4, 2023) (denying motion to dismiss Eighth Amendment claim even "though Defendants argue that they had instituted adequate COVID-19 protocols, such as testing and masking"); *Barbour v. State of Cal.*, No. 5:22-cv-00926-JGB-KK, 2023 WL 6369787, at *4 (C.D. Cal. Aug. 1, 2023) (denying motion to dismiss Eighth Amendment claim despite the fact that the defendants had implemented some precautionary measures such as installing plastic shields and providing cloth masks); *Maney*, 2020 WL 7364977, at *6 (concluding that summary judgment on the merits of the plaintiffs' Eighth Amendment claim "is premature" because "material factual disputes remain as to Defendants' response to COVID-19 within their facilities").

## V.   FOURTEENTH AMENDMENT: EQUAL PROTECTION

Gardner argues that Defendants violated his Fourteenth Amendment right to equal protection by forcing vaccinated AICs to continue to wear masks while non-incarcerated vaccinated individuals were no longer subject to mask mandates. (Compl. at 14.) Gardner also argues that Defendants violated his right to equal protection by discriminating against him based on his religion, viewpoint, and politics by forcing him to wear a mask. (*Id.* at 19.) Defendants argue for dismissal of both claims. (Defs.' Mot. at 10-13.)

### A.   Mask Mandate for Vaccinated AICs

Gardner argues that Defendants violated his right to equal protection by forcing vaccinated AICs to continue to wear masks while non-incarcerated vaccinated individuals were

---

omitted); *Puckett v. Barrios*, No. 1:23-cv-00054-HBK (PC), 2023 WL 2088353, at *3 (E.D. Cal. Feb. 17, 2023) ("Plaintiff also satisfies the causation and harm requirements because he alleges that he suffered physical injury including pain, dizziness, and infection with COVID-19 as a proximate result of Defendants' inaction.").

no longer subject to mask mandates. (Compl. at 14.) Defendants argue that the Court should dismiss Gardner's claim because AICs are not a suspect class and because Gardner has not alleged that he received a COVID vaccine.[3] (Defs.' Mot. at 10-11.) The Court concludes that Gardner fails to state an equal protection claim.

"To state a claim under 42 U.S.C. § 1983 for a violation of the Equal Protection Clause of the Fourteenth Amendment a plaintiff must show [either] that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class[,]" or that the plaintiff "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998) (intentional discrimination); *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (different treatment).

"[N]either prisoners nor 'persons convicted of crimes' constitute a suspect class for equal protection purposes." *United States v. Whitlock*, 639 F.3d 935, 941 (9th Cir. 2011) (citations omitted). Gardner has not alleged membership in any other protected class. Thus, Gardner has not pled that Defendants acted with an intent to discriminate against him based upon membership in a protected class. Gardner also has not pled that Defendants *intentionally* treated him differently from others similarly situated nor that any difference in treatment had no legitimate penological purpose. *See id.* (explaining that rational basis means "a reasonable relationship to a legitimate governmental interest" (quoting *United States v. LeMay*, 260 F.3d 1018, 1031 (9th Cir. 2001))); *Pers. v. Jones*, No. 2:21-cv-1522-WBS-DMC-P, 2023 WL 1824548, at *5 (E.D. Cal. Feb. 8, 2023) ("In order to state a § 1983 claim based on a violation of the Equal Protection Clause of the Fourteenth Amendment, a plaintiff must allege that defendants acted with

---

[3] Defendants are mistaken. (*See* Compl. ¶ 92 ("Plaintiff[] opted to receive the Moderna vaccination[.]")).

PAGE 13 – FINDINGS AND RECOMMENDATION

intentional discrimination against plaintiff, or against a class of inmates which included plaintiff, and that such conduct did not relate to a legitimate penological purpose."), *findings and recommendation adopted*, 2023 WL 2655779 (E.D. Cal. Mar. 27, 2023). The Court recommends that the district judge dismiss Gardner's equal protection claim. *Spencer v. Pulido-Esparza*, No. 1:20-cv-01176-JLT-GSA-PC, 2023 WL 3342614, at *9 (E.D. Cal. May 10, 2023) (dismissing equal protection claim where "there are no facts in the complaint that show discriminatory intent on the part of defendants"), *findings and recommendation adopted*, 2023 WL 5155835 (E.D. Cal. Aug. 10, 2023).

### B. Religious, Viewpoint, and Political Discrimination

Gardner asserts that Defendants' enforcement of a mask mandate discriminated against him based on his religion, viewpoint, and political affiliation because the mandate forced "political ideology" upon him. (Compl. at 19-20.) Defendants argue that the Court should dismiss his claim because wearing a mask does not cause others to believe that the wearer has a particular set of political beliefs. (Defs.' Mot. at 13.) The Court agrees that Gardner has not adequately pled an equal protection claim.

"Where the claim is invidious discrimination . . . [U.S. Supreme Court] decisions make clear that the plaintiff must plead and prove that the defendant acted with discriminatory purpose . . . because of, not merely in spite of, the action's adverse effects upon an identifiable group." *Iqbal*, 556 U.S. at 676 (simplified).

First, Gardner has not alleged that Defendants required him to comply with a mask mandate *because of* his religion, viewpoint, or political beliefs. *Cf. Harris v. Skolnik*, No. 2:10-cv-00365-RLH, 2011 WL 3847196, at *3 (D. Nev. Aug. 29, 2011) (concluding that the plaintiff adequately stated an equal protection claim where the plaintiff claimed "that the Verification Policy is only implemented against [AICs] of the Jewish faith"). Although Gardner alleges that

PAGE 14 – FINDINGS AND RECOMMENDATION

Defendants acted hypocritically by only wearing masks and social distancing in public while ignoring precautions in private (Compl. ¶ 134), he does not allege that Defendants implemented or enforced the mask mandate at EOCI with a discriminatory purpose. Further, to the extent Gardner argues that Defendants forced him to engage in expressive conduct with which he disagrees in violation of the First Amendment, the Court concludes that the act of wearing a mask is not inherently expressive conduct. See *Preciado v. Great Wolf Lodge*, No. 2:22-cv-01422-PHX-DLR, 2023 WL 5432319, at *2 (D. Ariz. Aug. 23, 2023) (concluding that the plaintiffs' complaint about the defendants' "enforcement of the mask policy" did not state a First Amendment claim); *Denis*, 538 F. Supp. 3d at 1079 ("They require specific conduct: wearing a mask in public. That conduct does not include a significant expressive element."); *see also Minn. Voters All. v. Walz*, 492 F. Supp. 3d 822, 837 (D. Minn. 2020) (concluding that wearing or not wearing a face covering "is not inherently expressive").

Accordingly, the Court recommends that the district judge dismiss Gardner's equal protection claim. See *Harris v. Lake Cnty. Jail*, No. 1:11-cv-6209-NJV, 2012 WL 2501037, at *3 (N.D. Cal. June 27, 2012) ("Plaintiff had failed to allege any facts showing that Defendants treated him differently than they treated any other [AIC] based on his religion and therefore did not state a claim for discrimination under the Fourteenth Amendment.").

### VI. FOURTEENTH AMENDMENT: DUE PROCESS

Gardner claims that Defendants violated his Fourteenth Amendment rights by imposing a mask mandate because cloth masks are ineffective for preventing the spread of COVID and mandating masks infringes on his "right to breathe oxygen without restriction" and "the inherent right of every person to care for their own body." (Compl. at 17-18.) Defendants argue that the Court should dismiss Gardner's Fourteenth Amendment claim because there is no fundamental

right to avoid wearing a mask. (Defs.' Mot. at 11.) The Court agrees that Gardner has failed to state a due process claim.

The Fourteenth Amendment provides guarantees of both procedural and substantive due process. *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541 (1985) ("The [Fourteenth Amendment] categories of substance and procedure are distinct."). "A procedural due process claim hinges on proof of two elements: (1) a protectible liberty or property interest . . . ; and (2) a denial of adequate procedural protections." *Thornton v. City of St. Helens*, 425 F.3d 1158, 1164 (9th Cir. 2005) (simplified). It is not clear what further process Gardner believes he was due here. As such, Gardner's complaint "lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory to state a [procedural] due process claim." *Howe v. Cnty. of Mendocino*, No. 21-16665, 2022 WL 3952395, at *2 (9th Cir. Aug. 31, 2022) (simplified).[4]

"To establish a substantive due process claim, a plaintiff must, as a threshold matter, show a government deprivation of life, liberty, or property." *Heidt v. City of McMinnville*, No. 3:15-cv-0989-SI, 2015 WL 9484484, at *7 (D. Or. Dec. 29, 2015) (quoting *Nunez v. City of L.A.*, 147 F.3d 867, 871 (9th Cir. 1998)). The Fourteenth Amendment "provides heightened protection against government interference with certain fundamental rights and liberty interests." *Washington v. Glucksberg*, 521 U.S. 702, 720 (1997).

"Numerous courts have . . . found that while there is a fundamental right to medical autonomy, mask-mandates are not a form of medical treatment that triggers a fundamental liberty interest." *Health Freedom Def. Fund, Inc. v. City of Hailey, Idaho*, 590 F. Supp. 3d 1253, 1266

---

[4] To the extent Gardner sought to allege a violation of the Privileges and Immunities Clause, the Court similarly concludes that he has not offered a cognizable legal theory or sufficient facts to support that claim. *See Ellison v. Nevada*, 299 F. App'x 730, 731 (9th Cir. 2008) (affirming dismissal "because [the AIC's] allegations do not implicate 'the right of the newly arrived citizen to the same privileges and immunities enjoyed by other citizens of the same State'" (quoting *Saenz v. Roe*, 526 U.S. 489, 502 (1999))).

PAGE 16 – FINDINGS AND RECOMMENDATION

(D. Idaho 2022) (collecting cases); *see also* Gunter v. N. Wasco Cnty. Sch. Dist. Bd. of Educ., 577 F. Supp. 3d 1141, 1156-57 (D. Or. 2021) (concluding that mask mandates do not constitute medical treatment and collecting cases); Denis v. Ige, 538 F. Supp. 3d 1063, 1081 (D. Haw. 2021) (concluding that "[t]he 'right to breathe oxygen without restriction' is not a fundamental right"). The Court joins other courts in concluding that Gardner does not have a fundamental liberty interest in avoiding wearing a mask.

Because Gardner does not allege a fundamental liberty interest, rational basis review applies. *See* Best Supplement Guide, LLC v. Newsom, No. 20-17362, 2022 WL 2703404, at *2 (9th Cir. July 12, 2022). As discussed above, Defendants have a legitimate interest in protecting AICs from COVID, and Gardner has failed to allege that the mask mandate was "clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals or general welfare." Slidewaters LLC v. Wash. State Dep't of Lab. and Indus., 4 F.4th 747, 758 (9th Cir. 2021) (citation omitted). Accordingly, the Court recommends that the district judge dismiss Gardner's Fourteenth Amendment claim. *See* Gunter, 577 F. Supp. 3d at 1160 (dismissing the plaintiffs' substantive due process challenge to a mask mandate for failure to state a claim); Denis, 538 F. Supp. 3d at 1081 (same).

## VII. RLUIPA

Gardner alleges that Defendants violated RLUIPA by terminating all religious services and restricting religious practices for more than one year. (Compl. at 15.) Defendants argue that because Gardner is not entitled to damages under the statute and because he has not sought injunctive relief related to the termination of religious services, the Court should dismiss his RLUIPA claim. (Defs.' Mot. at 7-8.) The Court agrees.

Under RLUIPA, monetary damages are not available from state officials in their official capacities because RLUIPA "does not operate to effect a waiver of the states' sovereign

PAGE 17 – FINDINGS AND RECOMMENDATION

immunity from such suits." *Jones v. Williams*, 791 F.3d 1023, 1031 (9th Cir. 2015) (citing *Sossamon v. Texas*, 563 U.S. 277, 285 (2011)). Additionally, "RLUIPA does not authorize suits for damages against state officials in their individual capacities." *Id.* "A RLUIPA plaintiff may only sue defendants in their official capacities for prospective injunctive relief." *Jones v. Slade*, 23 F.4th 1124, 1140 n.4 (9th Cir. 2022).

Although Gardner seeks a permanent injunction requiring Defendants to build a medical and mental health facility at EOCI, to hire enough qualified medical and mental health staff to care for AICs, and to place a population cap on each housing unit at EOCI to maintain social distancing requirements, Gardner does not seek an injunction related to the termination of religious services and activities. (Compl. at 21.) Accordingly, the Court recommends that the district judge dismiss Gardner's RLUIPA claim. *See Rogers v. Giurbino*, 731 F. App'x 722, 723 (9th Cir. 2018) (affirming dismissal of RLUIPA claims because damages are not available under the statute and the plaintiff's claim for injunctive relief was moot); *see also Harris v. Holguin*, No. 2:18-cv-10382-DMG-DFM, 2019 WL 7987683, at *3 (C.D. Cal. Feb. 27, 2019) (dismissing claims that did "not include any prospective injunctive relief relating to [those] claims" and were otherwise barred by the Eleventh Amendment); *Rodrigues v. Ryan*, No. 3:16-cv-08272-PCT-DGC (ESW), 2017 WL 6033784, at *3 (D. Ariz. Dec. 6, 2017) (dismissing claims when it was "not clear what injunctive relief would be possible with respect to those claims").

## CONCLUSION

For the reasons stated, the Court recommends that the district judge GRANT IN PART and DENY IN PART Defendants' motion to dismiss (ECF No. 31), as follows:

- GRANT WITHOUT LEAVE TO AMEND:
  - Defendants' motion to dismiss claims for damages against OHA, and Brown and Peters in their official capacities.

PAGE 18 – FINDINGS AND RECOMMENDATION

- GRANT WITH LEAVE TO AMEND:
    - Defendants' motion to dismiss Gardner's class action allegations;
    - Defendants' motion to dismiss Gardner's First Amendment claim based on the mask mandate;
    - Defendants' motion to dismiss Gardner's Fourteenth Amendment equal protection claims;
    - Defendants' motion to dismiss Gardner's Fourteenth Amendment due process claim; and
    - Defendants' motion to dismiss Gardner's RLUIPA claim.
- DENY:
    - Defendants' motion to dismiss claims against Brown and Peters in their individual capacities; and
    - Defendants' motion to dismiss Gardner's Eighth Amendment claim.

The Court further recommends that the district judge provide Gardner thirty (30) days to file a third amended complaint, if he elects to do so. If Gardner does not amend his complaint, his First Amendment claim based on the termination of religious services and his Eighth Amendment claim will proceed against Brown and Peters in their individual capacities.

**SCHEDULING ORDER**

The Court will refer its Findings and Recommendation to a district judge. Objections, if any, are due within fourteen (14) days from service of the Findings and Recommendation. If no objections are filed, the Findings and Recommendation will go under advisement on that date. If objections are filed, a response is due within fourteen (14) days after being served with a copy of

the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

DATED this 3rd day of November, 2023.

_____
HON. STACIE F. BECKERMAN
United States Magistrate Judge