IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **TYLER GARDNER, 1,700 JOHN DOES,** and all others similarly situated,<br><br>        Plaintiffs,<br><br>        v.<br><br>**KATE BROWN** *et al.*,<br><br>        Defendants. | Case No. 2:21-cv-1256-SB<br><br>**ORDER** |

**Michael H. Simon, District Judge.**

      Plaintiff Tyler Gardner, a self-represented adult in custody (AIC), sues Oregon's former governor Kate Brown, the former director of the Oregon Department of Corrections Colleen Peters, the Oregon Health Authority, and 100 John Does (collectively, Defendants), alleging claims related to Defendants' response to the COVID-19 pandemic. Gardner claims that Defendants violated: (1) his First Amendment right to free exercise of religion by enforcing mask mandates; (2) his First Amendment right to free exercise of religion by terminating all religious services for more than one year; (3) his Eighth Amendment rights by failing adequately to respond to the COVID-19 pandemic; (4) his Fourteenth Amendment right to equal protection by requiring vaccinated AICs to wear masks when non-incarcerated, vaccinated individuals no

PAGE 1 – ORDER

longer had to wear masks; (5) his Fourteenth Amendment right to equal protection by discriminating against him based on his religion, viewpoint, or political affiliation by enforcing mask mandates; (6) his Fourteenth Amendment due process rights by enforcing a mask mandate; and (7) the Religious Land Use and Institutionalized Persons Act (RLUIPA) by terminating all religious services for more than one year. Although not an attorney, Gardner purports to bring these claims on behalf of himself, 1,700 Doe AICs, and all others similarly situated.

United States Magistrate Judge Stacie Beckerman issued Findings and Recommendation (F&R) in this case on November 3, 2023. ECF 43. Judge Beckerman recommended that this Court grant in part and deny in part Defendants' motion to dismiss. Specifically, Judge Beckerman recommended that the Court dismiss without leave to amend: (1) Gardner's claim for damages against Defendant Oregon Health Authority; and (2) Gardner's claims against Defendants Kate Brown and Colette S. Peters in their official capacities. Judge Beckerman also recommended that the Court dismiss with leave to amend: (1) Gardner's class action allegations; (2) Gardner's First Amendment claim based on the COVID-19 mask mandate; (3) Gardner's Fourteenth Amendment equal protection claims; (4) Gardner's Fourteenth Amendment due process claim; and (5) Gardner's RLUIPA claim. Judge Beckerman also recommended that the Court deny Defendants' motion to dismiss the following claims: (1) Gardner's claims against Brown and Peters in their individual capacities; and (2) Gardner's Eighth Amendment claim.

Defendants timely filed an objection, to which Gardner did not respond. Defendants object to the portion of Judge Beckerman's F&R concluding that Gardner's Eighth Amendment claim should not be dismissed. Defendants also object to the portion of Judge Beckerman's F&R concluding that Brown and Peters may be held liable in their in their individual capacity for

Gardner's Eighth Amendment claim under a supervisory liability theory. For the reasons below, the Court adopts as modified Judge Beckerman's F&R.

**A. Legal Standards**

    **1. Federal Magistrates Act**

Under the Federal Magistrates Act (Act), the Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate." 28 U.S.C. § 636(b)(1). If a party objects to a magistrate judge's findings and recommendations, "the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." *Id.*; Fed. R. Civ. P. 72(b)(3).

For those portions of a magistrate judge's findings and recommendations to which neither party has objected, the Act does not prescribe any standard of review. *See Thomas v. Arn*, 474 U.S. 140, 152 (1985) ("There is no indication that Congress, in enacting [the Act], intended to require a district judge to review a magistrate's report to which no objections are filed."); *United States. v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc) (holding that the court must review *de novo* magistrate judge's findings and recommendations if objection is made, "but not otherwise"). Although in the absence of objections no review is required, the Act "does not preclude further review by the district judge[] *sua sponte* . . . under a *de novo* or any other standard." *Thomas*, 474 U.S. at 154. Indeed, the Advisory Committee Notes to Rule 72(b) of the Federal Rules of Civil Procedure recommend that "[w]hen no timely objection is filed," the Court review the magistrate judge's recommendations for "clear error on the face of the record."

    **2. Motion to Dismiss, Failure to State a Claim**

A motion to dismiss for failure to state a claim may be granted only when there is no cognizable legal theory to support the claim or when the complaint lacks sufficient factual allegations to state a facially plausible claim for relief. *Shroyer v. New Cingular Wireless Servs.,*

*Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010). In evaluating the sufficiency of a complaint's factual allegations, the court must accept as true all well-pleaded material facts alleged in the complaint and construe them in the light most favorable to the non-moving party. *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012); *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010). To be entitled to a presumption of truth, allegations in a complaint "may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). The court must draw all reasonable inferences from the factual allegations in favor of the plaintiff. *Newcal Indus. v. Ikon Off. Sol.*, 513 F.3d 1038, 1043 n.2 (9th Cir. 2008). The court need not, however, credit a plaintiff's legal conclusions that are couched as factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).

A complaint must contain sufficient factual allegations to "plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr*, 652 F.3d at 1216. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Mashiri v. Epsten Grinnell & Howell*, 845 F.3d 984, 988 (9th Cir. 2017) (quotation marks omitted).

### 3. *Pro Se* Pleading Standard

A court must liberally construe the filings of a self-represented, or *pro se*, plaintiff and afford the plaintiff the benefit of any reasonable doubt. *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th

Cir. 2010). Further, "a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Florer v. Congregation Pidyon Shevuyim, N.A.*, 639 F.3d 916, 923 n.4 (9th Cir. 2011) (quotation marks omitted). "Unless it is absolutely clear that no amendment can cure the defect, . . . a *pro se* litigant is entitled to notice of the complaint's deficiencies and an opportunity to amend prior to dismissal of the action." *Garity v. APWU Nat'l Lab. Org.*, 828 F.3d 848, 854 (9th Cir. 2016) (alteration in original) (quoting *Lucas v. Dep't of Corr.*, 66 F.3d 245, 248 (9th Cir. 1995) (per curiam)). Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, however, every complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." This standard "does not require 'detailed factual allegations,'" but does demand "more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (2009) (quoting *Bell Atl. Corp.*, 550 U.S. at 555). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555).

**B. Background**

Because the parties' background is detailed in Judge Beckerman's F&R, the Court only summarizes relevant information as needed for context for the following discussion. Gardner is an AIC currently housed at the Eastern Oregon Correctional Institution (EOCI). Brown is the former Governor of Oregon who served during the COVID-19 pandemic. Peters is the former director of the Oregon Department of Corrections who also served during the COVID-19 pandemic. Gardner also asserts claims against 100 unnamed Does involved in the correctional system. Gardner brings various claims against Defendants based on Defendants' response to the COVID-19 pandemic.

**C. Discussion**

The Court has reviewed for clear error the portions of the F&R to which no party objects, and finding none, adopts the F&R's recommendations as to those portions.[1] The Court reviews *de novo* the portions of the F&R to which Defendants object. The crux of Defendants' argument is that the F&R failed to analyze the five "subclaims" within Gardner's First Cause of Action when recommending that Gardner's Eighth Amendment claim and his claim related to the individual liability of Brown and Peters should not be dismissed.

**1. Eighth Amendment Claim**

Gardner's First Cause of Action is made up of five "subclaims" of conduct that Gardner alleges violated his Eighth Amendment rights under the Constitution. Gardner alleges that Defendants were deliberately indifferent in violation of his Eighth Amendment rights by: (1) failing to construct plexiglass barriers around correctional staff stations and limit contact and interaction between all persons within the institution; (2) confining AICs in poorly ventilated areas for extended periods of time; (3) failing to maintain adequate medical and mental health

---

[1] The Court offers the following clarification related to Judge Beckerman's recommendation that the Court dismiss with leave to amend Gardner's class action allegations. Because Gardner is a *pro se* litigant, he is not qualified to act as class representative and may not assert claims on behalf of a putative class. *Blume v. CA*, 2020 WL 4004215, at *3 (D. Or. July 15, 2020) ("The Court notes that 'plaintiffs, proceeding *pro se* and without counsel, are not qualified to act as class representatives as they are unable to fairly represent and adequately protect the interests of the class.'"(quoting *Smith v. Quigley*, 2016 WL 3218804, at *1 (W.D. Wash. June 10, 2016)); *see also Russell v. United States*, 308 F.2d 78, 79 (9th Cir. 1962) (noting that "a litigant appearing *in propria persona* has no authority to represent anyone other than himself"); *Axtle v. City of Alameda*, 2013 WL 5979201, at *2 (N.D. Cal. Nov. 8, 2013) ("[P]*ro se* plaintiffs are not adequate class representatives able to fairly represent and adequately protect the interests of the class."). Thus, Gardner may only replead the class action allegations if he becomes represented by an attorney admitted to practice in the District of Oregon. Gardner may not replead the class action allegations if he continues this litigation *pro se*.

PAGE 6 – ORDER

facilities; (4) failing to provide COVID-19 treatment and testing; and (5) forcing AICs to wear masks.

### a. Applicable Law

"[T]he treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Helling v. McKinney*, 509 U.S. 25, 31 (1993). To establish an Eighth Amendment violation, a prisoner "must satisfy both the objective and subjective components of a two-part test." *Wilson v. Seiter,* 501 U.S. 294, 298-99 (1991). First, the plaintiff "must prove that Defendants have deprived them of the 'minimal civilized measure of life's necessities.'" *Hallett v. Morgan*, 296 F.3d 732, 744 (9th Cir. 2002) (quoting *Frost v. Agnos,* 152 F.3d 1124, 1128 (9th Cir.1998)). Second, the plaintiff "must demonstrate that Defendants acted with 'deliberate indifference' in doing so." *Id*. (citing *Wilson*, 501 U.S. at 297).

For an Eighth Amendment claim based on failure to prevent harm, to satisfy the first part of the test "the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (quoting *Wilson*, 501 U.S. at 298)). An inmate may show a substantial risk of serious harm when the conditions of incarceration "present[] an excessive risk to inmate health or safety." *Norbert v. City & County of San Francisco*, 10 F.4th 918, 934 (9th Cir. 2021) (quotation marks omitted). The substantial risk of serious harm must be "objectively intolerable," which requires that the risk be "sure or very likely to cause serious illness and needless suffering." *Id.* Although "the Eighth Amendment protects against future harm to inmates," *Helling*, 509 U.S. at 33, claims that contemplate a risk of future harm must "give rise to sufficiently imminent dangers" to establish an Eighth Amendment violation, *Baze v. Rees*, 553 U.S. 35, 50 (2008) (cleaned up).

The second part of the test requires that the plaintiff prove that the violation resulted from the defendant's subjective "deliberate indifference." This "subjective approach" focuses only "on what a defendant's mental attitude actually was." *Farmer*, 511 U.S. at 839. The Ninth Circuit has explained:

> A prison official acts with deliberate indifference only if the prison official knows of and disregards an excessive risk to inmate health and safety. Under this standard, the prison official must not only be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, but that person must also draw the inference. If a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk.

*Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004) (cleaned up).

    **b. Analysis**

Defendants move to dismiss the entirety of Gardner's Eighth Amendment claim, arguing that the Complaint acknowledged that Defendants "did take some reasonable actions in response to the pandemic." Apart from asserting that the F&R failed to analyze the sufficiency of each of the five alleged Eighth Amendment subclaims, Defendants object to the F&R's conclusion that "Gardner has adequately pled deliberate indifference, and it is premature at the pleading stage for the Court to evaluate the steps Defendants took to protect AICs during the pandemic." Defendants contend that Gardner fails to plead that the measures taken by Defendants were unreasonable, and therefore, that Gardner's Eighth Amendment claim fails in its entirety. Defendants' argument ostensibly is that if Defendants took *any* reasonable steps in response to the pandemic, then Gardner necessarily fails sufficiently to allege the deliberate indifference prong of the Eighth Amendment analysis. The Court does not find Defendants' categorical approach particularly persuasive and declines fully to adopt the analysis for which Defendants advocate. Instead, the Court evaluates the independent sufficiency of each of the five subclaims

that make up Gardner's Eighth Amendment claim. The Court notes at the outset of its discussion that Defendants do not argue that the risk of contracting COVID-19 does not pose a substantial risk of serious harm. Defendants' arguments center on the second part of the test, the deliberate indifference requirement.

Gardner's first subclaim alleges that Defendants violated the Eighth Amendment by failing to limit contact between correctional staff and AICs by taking such measures as installing plexiglass barriers around staff workstations. Gardner alleges that Defendants were aware that many correctional staff and volunteers remain unvaccinated against COVID-19 and therefore pose a risk to Gardner.[2] As noted above, Court rejects Defendants' categorical argument that a complaint that pleads that the defendants took any steps in response to a substantial risk of harm necessarily negate a finding of deliberate indifference. In the context of this subclaim, however, the Court considers significant that Gardner includes specific allegations that EOCI took some measures to prevent the transmission of COVID-19 into the prison. Although Gardner may desire the prison to construct more plexiglass barriers to limit contact between AICs and prison staff and further reduce the likelihood of transmission of COVID-19 into the prison, the Court cannot conclude that Gardner's allegations in this subclaim plausibly present an "objectively intolerable risk of harm," *Farmer*, 511 U.S. at 846, or that Defendants "disregard[ed] an excessive risk to inmate health and safety," *Toguchi*, 391 F.3d at 1057, by failing to implement

---

[2] Gardner frames the allegations in this subclaim as a comparison of the measures taken to prevent the spread of COVID-19 by visitors to EOCI and the measures taken to prevent the spread of COVID-19 by correctional staff and volunteers. The Court does not construe the Complaint as asserting a claim based on the deprivation of visitation, and instead interprets Gardner's allegations relating to visitors as merely demonstrating the types of steps available to Defendants to limit contact between AICs and correctional staff.

PAGE 9 – ORDER

the specific measures that Gardner advocates for in this subclaim. Accordingly, the Court dismisses this subclaim.

Gardner's second subclaim alleges that Defendants violated the Eighth Amendment by confining AICs indoors in poorly ventilated spaces without the means to practice social distancing. Gardner alleges that Defendants were aware that COVID-19 is more transmittable indoors and that by restricting Gardner to poorly ventilated spaces, Defendants were subjecting him to a heightened risk of COVID-19 infection. Unlike the allegations contained within the first subclaim, the Complaint does not allege that Defendants took any steps to mitigate the substantial risk of harm of contracting COVID-19 caused by overcrowding and lack of ability to physically distance. Taking all Gardner's allegations as true and liberally construing the allegations in Gardner's favor, the Court finds that Garner has pleaded a plausible claim for relief for this alleged violation of the Eighth Amendment.

Plaintiff's third subclaim alleges that Defendants violated the Eighth Amendment by failing to maintain adequate medical and mental health facilities and qualified medical staff. Plaintiff does not allege that Defendants subjectively were aware of the substantial risk of harm associated with the conduct underlying this subclaim. Thus, this subclaim fails to state a violation of the Eighth Amendment and must be dismissed.

Plaintiff's fourth subclaim alleges that Defendants violated the Eighth Amendment by failing to treat COVID-19 using certain therapeutics and failing to test prisoners for COVID-19 antibodies. The decision whether to order specific medical tests or use different or preferred therapeutics is a matter of medical judgment that does not, by itself, constitute an Eighth Amendment violation. *Estelle v. Gamble*, 429 U.S. 97, 107 (1976) ("[T]he question whether . . . diagnostic techniques or forms of treatment is indicated is a classic example of a matter for

medical judgment. A medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment."); *see also Toguchi*, 391 F.3d at 1058 ("[A] mere difference of medical opinion insufficient, as a matter of law, to establish deliberate indifference." (cleaned up)). Thus, Plaintiff's allegations within this subclaim are insufficient to state an Eighth Amendment violation and must be dismissed.

Plaintiff's fifth subclaim alleges that Defendants violated the Eighth Amendment by imposing a mask mandate. According to the Complaint, masks pose serious health concerns and are ineffective at preventing the spread of COVID-19. Assuming—without deciding—that Plaintiff's allegations related to the prison's masking policy satisfies the substantial risk of serious harm requirement, Plaintiff fails to allege that Defendants subjectively were aware of the substantial risk of harm. This subclaim must also be dismissed.

In summary, the Court finds that, taking all allegations as true and liberally construing the allegations in Gardner's favor, Gardner second subclaim contains allegations sufficient to state a plausible claim under the Eighth Amendment. Gardner's first, third, fourth, and fifth subclaims fail to state a claim for violations of the Eighth Amendment and therefore must be dismissed.

   2. **Individual Liability**

The Court next evaluates the sufficiency of Gardner's allegations regarding the individual supervisory liability of Brown and Peters. The F&R concluded that Gardner had pleaded facts sufficient to state claims for relief against Brown and Peters in their individual capacities. Defendants argue that the F&R improperly analyzed Brown's and Peters' supervisory liability because Gardner failed to allege facts linking Brown and Peters to each of the five subclaims within the Eighth Amendment claim. Because the Court has determined that Gardner's allegations in his first, third, fourth, and fifth subclaims are insufficient to state plausible claims

for relief, the Court analyzes only the sufficiency of the allegations against Brown and Peters contained within the second subclaim.³

### a. Applicable Law

To be held liable under a theory of supervisory liability, "the supervisor need not be 'directly and personally involved in the same way as are the individual officers who are on the scene inflicting constitutional injury.'" *Starr*, 652 F.3d at 1205 (quoting *Larez v. City of Los Angeles*, 946 F.2d 630, 645 (9th Cir. 1991)). Instead, "[a] supervisor can be liable in his individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates; for his acquiescence in the constitutional deprivation; or for conduct that showed a reckless or callous indifference to the rights of others." *Id*. at 1208 (quotation marks omitted). Thus, "[a] defendant may be held liable as a supervisor under § 1983 'if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.'" *Id.* at 1207 (quoting *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989)). In addition, the plaintiff "must show the supervisor breached a duty to [the] plaintiff which was the proximate cause of the injury." *Id.* (quotation marks omitted).

### b. Analysis

Defendants argue that Judge Beckerman erred by holding that Brown and Peter can be held liable for "minutiae of decisions within EOCI during the height of the pandemic." Defendants contend that the Complaint lacks allegations causally connecting Brown and Peters to the alleged constitutional violations.

---

³ Defendants have not raised a defense of qualified immunity in response to Gardner's claims against Brown and Peters, and the Court expresses no views on the applicability of that defense here.

The key allegations contained within the Complaint that underlie the supervisory liability claims are as follows. The Complaint alleges that Brown, as the governor of Oregon, was "responsible for faithfully executing the laws and Constitution of the State, and has the ability to issue executive orders during emergencies." The Complaint alleges that Peters was "responsible for overseeing the Oregon Department of Corrections, and creating and enforcing policies."

As to the allegations regarding Brown, the Court finds significant that the Complaint does not allege that Brown was personally involved in the planning or implementation of the COVID-19 policies or procedures for Oregon's correctional institutions. The Complaint does not allege that Brown was even aware of those policies. Based on the allegations in the Complaint, Garner has not alleged that Brown has either the requisite personal involvement in the alleged constitutional deprivation or that any specific conduct by Brown is causally connected to the alleged Eighth Amendment violation asserted in Gardner's second subclaim. Thus, Gardner has failed to allege Brown's supervisory liability in relation to the alleged constitutional violation contained within Gardner's second subclaim.

The allegations regarding Peters are on different footing. The Complaint alleges that Peters was responsible for overseeing the Oregon Department of Corrections and was responsible for creating and enforcing policies. In contrast to the allegations related to Brown, these allegations plausibly link Peters to the alleged constitutional violations because the Complaint alleges that she was personally involved in creating the policies that resulted in the alleged constitutional violation. Further, as state prison official, Peters had a duty to the inmates in the correctional facilities that she oversaw. *See Helling*, 509 U.S. at 32 ("When the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well being.")

(cleaned up). The Court finds that, drawing all inferences in Gardner's favor, the Complaint alleges enough to state a claim against Peters in her individual capacity.

**D. Conclusion**

For the reasons discussed, the Court ADOPTS as modified Judge Beckerman's F&R, ECF 43. The Court GRANTS IN PART AND DENIES IN PART Defendants' Motion to Dismiss, ECF 31. The Court GRANTS without leave to amend Defendants' motion to dismiss the following claims: (1) Gardner's claim for damages against Defendant Oregon Health Authority; and (2) Gardner's claims against Defendants Kate Brown and Colette S. Peters in their official capacities. The Court GRANTS with leave to amend Defendants' motion to dismiss the following claims and allegations: (1) Gardner's class action allegations, but only if Gardner is represented by counsel; (2) Gardner's First Amendment claim based on the COVID-19 mask mandate; (3) Gardner's Fourteenth Amendment equal protection claims; (4) Gardner's Fourteenth Amendment due process claim; and (5) Gardner's RLUIPA claim. The Court GRANTS with leave to amend Defendants' motion to dismiss Gardner's first, third, fourth, and fifth subclaims under Gardner's First Cause of Action and Gardner's claims against Brown her individual capacity. The Court DENIES Defendants' motion to dismiss Gardner's second subclaim under his Eighth Amendment claim and Gardner's claim against Peters in her individual capacity, without considering the issue of qualified immunity, which has not yet been raised. Gardner may file an amended complaint on or before April 19, 2024 if he believes he can cure the deficiencies identified in Judge Beckerman's F&R and this Order.

**IT IS SO ORDERED.**

DATED this 18th day of March, 2024.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge