IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| TYLER GARDNER *et al.*, | Case No. 2:21-cv-01256-SB |
| Plaintiffs, | **FINDINGS AND RECOMMENDATION** |
| v. | |
| KATE BROWN *et al.*, | |
| Defendants. | |

**BECKERMAN, U.S. Magistrate Judge.**

Plaintiff Tyler Gardner ("Gardner"), a self-represented adult in custody ("AIC") of the Oregon Department of Corrections ("ODOC"), initiated this action alleging various constitutional claims under 42 U.S.C. § 1983 ("Section 1983") against Oregon's former governor Kate Brown ("Brown"), ODOC's former director Colette Peters ("Peters") (together, "State Defendants"), the Oregon Health Authority ("OHA"), and 100 John Doe Defendants, styled as a class action relating to those defendants' response to the COVID-19 ("COVID") pandemic. (*See generally* Compl., ECF No. 2.) The Court previously granted in part and denied in part the State Defendants' motion to dismiss Gardner's complaint, with leave to amend. *See Gardner v. Brown*, No. 2:21-cv-01256-SB, 2023 WL 11022871 (D. Or. Nov. 3, 2023), *findings and*

PAGE 1 – FINDINGS AND RECOMMENDATION

*recommendation adopted as modified*, 2024 WL 1155381 (D. Or. Mar. 18, 2024),

*reconsideration denied*, 2024 WL 2221664 (D. Or. Apr. 23, 2024), *appeal dismissed*, 2024 WL

3823826 (9th Cir. June 18, 2024). Specifically, Gardner's First Amendment claim based on the

termination of religious services and his Eighth Amendment claim based on confining AICs

without means to practice social distancing survived the first motion to dismiss. *See Gardner*,

2023 WL 11022871, at *10 ("If Gardner does not amend his complaint, his First Amendment

claim based on the termination of religious services and his Eighth Amendment claim . . . will

proceed against . . . Peters in [her] individual capacit[y].")); (*see also* ECF No. 58, order

clarifying that "two discrete claims in the Complaint survived the motion to dismiss[.]")

Now before the Court is Gardner's motion for leave to file an amended complaint. (*See*

Mot. Leave File Am. Compl. ("FAC"), ECF No. 67; *see also* ECF No. 68, the Court's Order

interpreting Gardner's "filing of an amended complaint (adding new parties and claims) . . . as a

motion for leave to amend his complaint[.]") In the FAC, Gardner seeks leave to assert several

claims on behalf of himself and others against the following defendants: Brown, Peters,

Oregon's Eastside Institutions Administrator Mark Nooth ("Nooth"), ODOC Deputy Director

Heidi Steward ("Steward"), ODOC Deputy Director Mike Gower ("Gower"), ODOC Assistant

Director of Operations Rob Persson ("Persson"),[1] ODOC Assistant Director of Operations Joe

Bugher ("Bugher"), former Superintendent of the Eastern Oregon Correctional Institution

("EOCI") Sue Washburn ("Washburn"), former OHA director Patrick Allen ("Allen"), EOCI

Assistant Superintendent of Correctional Rehabilitation Andrea Neistadt ("Neistadt"), EOCI

Superintendent David Pedro ("Pedro") (together, the "Supervisor Defendants"), former White

---

[1] Gardner spelled Persson's name incorrectly in the FAC, and the Court directs the Clerk of Court to correct the docket to reflect the accurate spelling.

House Press Secretary Jen Psaki ("Psaki"), MSNBC host Joy Reid ("Reid"), MSNBC host Rachel Maddow ("Maddow"), former White House COVID Task Force Member Dr. Anthony Fauci ("Fauci") (all together, the "COVID Defendants"), Oregon State Correctional Institution ("OSCI") hearings officer Donald Golden ("Golden"), and EOCI Supervising Executive Assistant Christopher Scarr ("Scarr") (all together, "Defendants"). The State Defendants oppose Gardner's motion on the ground that granting Gardner leave to amend would be futile. (*See generally* Resp. Opp'n Pl.'s Mot. Leave File Am. Compl. ("State Defs.' Opp'n"), ECF No. 76.)

The Court has jurisdiction over Gardner's claims pursuant to 28 U.S.C. § 1331, but not all parties have consented to the jurisdiction of a magistrate judge under 28 U.S.C. § 636. For the reasons that follow, the Court recommends that the district judge grant in part and deny in part Gardner's motion.

## LEGAL STANDARDS

Under Federal Rule of Civil Procedure ("Rule") 15(a)(2), after a responsive pleading is filed, "a party may amend its pleading only with the opposing party's written consent or the court's leave." FED. R. CIV. P. 15(a)(2). "A court should 'freely give leave [to amend] when justice so requires.'" *Carrico v. City & Cnty. of S.F.*, 656 F.3d 1002, 1008 (9th Cir. 2011) (quoting FED. R. CIV. P. 15(a)(2)). "This policy is to be applied with extreme liberality." *C.F. ex rel. Farnan v. Capistrano Unified Sch. Dist.*, 654 F.3d 975, 985 (9th Cir. 2011) (simplified).

"In determining whether to grant leave to amend, the district court considers the presence of any of the following four factors: (1) bad faith, (2) undue delay, (3) prejudice to the opposing party, and (4) futility." *Tadros v. Wilmington Tr., Nat'l Ass'n as Tr. to Citibank, N.A.*, No. 3:17-cv-01623-AA, 2018 WL 5298144, at *2 (D. Or. Oct. 25, 2018) (citing *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 712 (9th Cir. 2001)); *see also Griggs v. Pace Am. Grp., Inc.*,

170 F.3d 877, 880 (9th Cir. 1999) (noting that courts should weigh the relevant factors "with all inferences in favor of granting the motion") (citation omitted).

"Futility of amendment, however, 'can, by itself, justify the denial of a motion for leave to amend.'" *Tadros*, 2018 WL 5298144, at *2 (quoting *Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995)). "A proposed amendment is futile if it would not withstand a motion to dismiss." *Id.* (citation omitted).

## DISCUSSION

In the FAC, Gardner names seven additional plaintiffs and fourteen additional defendants. (*Compare* Compl. ¶¶ 3-8 *with* FAC.) In total, Gardner appears to move for leave to assert eight claims on behalf of eight named plaintiffs against sixteen defendants.[2] (*See generally* FAC at 2-5.) Gardner asserts five Eighth Amendment claims (*id.* at 5-25) and three First Amendment claims against various subgroups of Defendants. (*See id.* at 25-35.)

Gardner's FAC includes the following claims:

> (1)    an Eighth Amendment claim against the Supervisor Defendants for allegedly "confining AICs for excessive period[s] of time to poorly ventilated [spaces] . . . without the means to practice social distancing" (*id.* at 8);
>
> (2)    Eighth Amendment claim against the Supervisor Defendants for allegedly "failing to maintain adequate medical and mental health facilities with quality staff" (*id.* at 12);[3]

---

[2] Gardner also seeks leave to assert claims on behalf of "Plaintiff John Does [who] are Adults in Custody . . . [in] custody of the Oregon Department of Corrections." (FAC at 7.)

[3] As further discussed below, the Court interprets this claim as consisting of two subclaims, one subclaim relating to mental health care and one subclaim relating to medical care.

(3)      an Eighth Amendment claim against the COVID Defendants based on their masking policies that allegedly forcing him to wear a mask (*see id.* at 16);

(4)      an Eighth Amendment claim against the Supervisor Defendants for allegedly "fail[ing] to treat COVID" (*id.* at 22);

(5)      an Eighth Amendment claim against the COVID Defendants for allegedly "coerc[ing Gardner] into taking the [COVID] vaccine" (*id.* at 23);

(6)      a First Amendment claim against the Supervisor Defendants for allegedly violating the "Free Exercise of Religion Clause" by "terminating all religious services and practices for over one year" (*id.* at 25);

(7)      a First Amendment claim against the COVID Defendants for allegedly violating Gardner's "right to be free from religious, viewpoint, and political discrimination" by "creating then enforcing government mask mandates" (*id.* at 28); and

(8)      a First Amendment claim against Golden, Scarr, Pedro, and Neistadt for allegedly "retaliat[ing] against [Gardner] . . . for exercising [his] right to access the courts." (*Id.* at 31.)

The State Defendants do not oppose Gardner's motion to amend to assert an Eighth Amendment claim against Peters for allegedly confining AICs for excessive periods of time to poorly ventilated spaces without the means to practice social distancing. (*See generally* State Defs.' Opp'n.)

## I.    ADDITIONAL PLAINTIFFS

The State Defendants oppose Gardner's motion as it relates to his class action allegations on the ground that Gardner, a self-represented AIC, may not represent a class. (*See id.* at 34.)

The State Defendants also argue that the Court should deny Gardner's motion to add seven named plaintiffs "[b]ecause none of the other seven purported plaintiffs have signed the [F]AC[.]" (*Id.* at 35.)

Gardner styled the FAC as a class action, purporting to raise his claims on behalf of himself and "Plaintiff John Does [who] are Adults in Custody . . . under the care and custody of the Oregon Department of Corrections." (FAC at 2-3; *see also id.* at 1, including in the footer of the FAC "CLASS ACTION ALLEGATION COMPLAINT[.]") As the Court previously explained, a self-represented plaintiff may not represent other plaintiffs in litigation.[4] *See Gardner*, 2023 WL 11022871, at *3 ("Because Gardner may not represent the interests of a class, the Court recommends that the district judge dismiss the 1,700 Plaintiff John Does and Gardner's class action allegations and allow Gardner to proceed with his claims only to the extent that he seeks relief for himself.") (citations omitted).

Further, "[i]f a *pro se* litigant files a complaint that lists other plaintiffs, those plaintiffs must personally sign the complaint pursuant to [Rule] 11(a) to proceed as parties." *Jackson v. Gill*, No. 6:20-cv-00906-MK, 2021 WL 5239509, at *2 (D. Or. Oct. 15, 2021) (citing *Bennett v. Misner*, No. 3:02-cv-01662-HA, 2004 WL 2091473, at *2 (D. Or. Sept. 17, 2004)), *findings and recommendation adopted*, 2021 WL 5237232 (D. Or. Nov. 10, 2021). Thus, Gardner cannot assert claims on behalf of the other named plaintiffs because the FAC only contains Gardner's signature. *See id.* at *3 ([D]ismissal is appropriate as to the . . . Plaintiffs who have not signed the

---

[4] A related class action remains pending, in which this Court certified a class of "[a]ll adults incarcerated in Oregon Department of Corrections facilities who: (1) were incarcerated on or after February 1, 2020; (2) while incarcerated, tested positive or were otherwise diagnosed with COVID-19; and (3) if they became incarcerated after February 1, 2020, tested positive or were otherwise diagnosed with COVID-19 at least fourteen days after they entered Oregon Department of Corrections custody[.]" *Maney v. State*, No. 6:20-cv-00570-SB, 2022 WL 986580, at *26 (D. Or. Apr. 1, 2022).

[amended complaint.] . . . Because the Court previously warned Plaintiff . . . that he cannot represent other plaintiffs, and because Plaintiff had substantial time to secure other plaintiffs' signatures and failed to do so, dismissal should be with prejudice.").

Accordingly, the district judge should deny Gardner's motion for leave to file an amended complaint to assert claims on behalf of seven additional plaintiffs or "John Does [who] are Adults in Custody . . . under the care and custody of the Oregon Department of Corrections." (FAC at 2-3.)

## II.    OFFICIAL CAPACITY CLAIMS

In the FAC, Gardner also appears to seek leave to assert claims for damages against "all named defendants . . . in their . . . official capacities." (FAC at 1.) As the Court previously explained, with respect to state officials, "damages claims against the individual defendants in their official capacities are barred by the Eleventh Amendment." *Gardner*, 2023 WL 11022871, at *3 (quoting *Brown v. Or. Dep't of Corr.*, 751 F.3d 983, 989 (9th Cir. 2014)). Thus, the Eleventh Amendment bars Gardner's damages claims against any state officials in their official capacities.

To the extent that Gardner seeks to assert claims for damages against federal officials in their official capacity, sovereign immunity bars those claims. *See Wilborn v. Mayorkas*, No. 21-56391, 2022 WL 3700850, at *1 (9th Cir. Aug. 26, 2022) ("[T]he United States is immune from suit unless it has expressly waived its sovereign immunity, and 'sovereign immunity cannot be avoided by naming officers and employees of the United States as defendants.'" (quoting *Gilbert v. DaGrossa*, 756 F.2d 1455, 1458 (9th Cir. 1985))).

Accordingly, the district judge should deny Gardner's motion for leave to amend to the extent he seeks to assert claims for damages against state or federal officials in their official capacities.

PAGE 7 – FINDINGS AND RECOMMENDATION

### III.    EIGHTH AMENDMENT

The State Defendants oppose Gardner's motion for leave to amend his Eighth Amendment claim on two grounds. First, the State Defendants argue that the Court should deny Gardner leave to amend on the ground that Gardner fails sufficiently to allege facts in the FAC to support any new Eighth Amendment claim upon which relief can be granted. (*See* State Defs.' Opp'n at 16-34.) Second, the State Defendants argue that Gardner fails sufficiently to allege facts establishing that any of the Supervisor Defendants were personally involved in the alleged Eighth Amendment violations. (*Id.* at 29-34.)

#### A.    Applicable Law

To establish an Eighth Amendment claim, an AIC must demonstrate (1) an "objectively, sufficiently serious" deprivation and (2) that the prison official acted with a "sufficiently culpable state of mind," i.e., "deliberate indifference." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (simplified). "The second prong requires showing: (a) a purposeful act or failure to respond to a[n AIC]'s pain or possible medical need and (b) harm caused by the indifference." *Wilhelm v. Rotman*, 680 F.3d 1113, 1122 (9th Cir. 2012) (citing *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006)); *see also Lemire v. Cal. Dep't of Corr. & Rehab.*, 726 F.3d 1062, 1074 (9th Cir. 2013) ("[P]laintiffs alleging deliberate indifference must also demonstrate that the defendants' actions were both an actual and proximate cause of their injuries.") (citation omitted); *Hass v. Cnty. of Sacramento Dep't of Support Servs.*, No. 2:13-cv-01746, 2014 WL 5035949, at *2 (E.D. Cal. Oct. 8, 2014) ("Actual injury—or a continuing risk of harm—is a necessary element of a . . . claim.") (citations omitted).

///

///

///

B.     **Analysis**

1.     **Failure to State a Claim**

a.     **Inadequate Medical and Mental Health Care Facilities**

In the FAC, Gardner seeks to assert an Eighth Amendment claim against the Supervisor Defendants for allegedly "failing to maintain adequate medical and mental health facilities with quality staff." (FAC at 12.) The Court previously dismissed Gardner's claims relating to inadequate medical and mental health care facilities because Gardner failed to "allege that Defendants subjectively were aware of the substantial risk of harm associated with the conduct underlying this subclaim." *Gardner*, 2024 WL 1155381, at *5. The State Defendants argue that the Court should deny Gardner leave to amend to add claims related to mental health care facilities "because he has not adequately alleged facts showing that he has been deprived of adequate mental health care." (State Defs.' Opp'n at 16.)

The State Defendants appear only to oppose Gardner's motion relating to Gardner's Eighth Amendment claim related to medical facilities on the ground that Gardner failed adequately to plead facts supporting that any of the Supervisor Defendants except Peters were personally involved in the alleged constitutional violation. (*See* FAC at 12-16, distinguishing factual allegations relating to "medical" from "mental"; State Defs.' Opp'n at 16, opposing only leave to assert "claims related to mental health care" and citing to the "mental" portion of Garner's FAC allegations; *see also id.* at 29-34, arguing that Gardner fails adequately to allege facts establishing that all of the Supervisor Defendants except Peters were personally involved in the alleged constitutional violations).

1)     **Mental Health Care**

In the FAC, Gardner alleges that "Defendants knew that there were no mental health facilit[ies], clinicians, psychologists, or psychiatric doctors at EOCI to adequately prescribe[]

mental health care to [Gardner.]" (FAC at 16.) Gardner alleges that the Supervisor Defendants'

"failure to operate a constitutional mental health facility resulted in [Gardner's] . . . inability to

seek help from qualified mental-health providers, which resulted in [him] being forced to deal

with [his] serious mental health issues on [his] own." (*Id.*) As a result, Gardner alleges that he

suffered further psychological harm. (*See id.*)

The Court finds that Gardner fails to state an Eighth Amendment claim upon which relief

can be granted. Specifically, as Judge Simon previously explained, "[t]he second part of the

[Eighth Amendment] test requires that the plaintiff prove that the violation resulted from the

defendant's subjective 'deliberate indifference.'" *Gardner*, 2024 WL 1155381, at *4. To satisfy

this requirement, "the prison official must not only be aware of facts from which the inference

could be drawn that a substantial risk of serious harm exists, but that person must also draw the

inference[,]" meaning that "[i]f a prison official should have been aware of the risk, but was not,

then the official has not violated the Eighth Amendment, no matter how severe the risk." *Id.*

(quoting *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004)).

Gardner alleges that the Supervisor Defendants knew that EOCI did not have a mental

health facility. (*See* FAC at 16, "Defendants knew that there were no mental health facilit[ies],

clinicians, psychologists, or psychiatric doctors at EOCI to adequately prescribe[] mental health

care to . . .Gardner[.]") Gardner fails to allege that the Supervisor Defendants were actually

aware of a substantial risk of serious harm based on their alleged failure to maintain mental

health facilities at EOCI. Accordingly, the district judge should deny as futile Gardner's motion

for leave to amend his complaint to assert an Eighth Amendment claim against the Supervisor

Defendants based on their alleged failure to provide adequate mental health care facilities. *See*

*Gardner*, 2024 WL 1155381, at *4 ("If a prison official should have been aware of the risk, but

was not, then the official has not violated the Eighth Amendment, no matter how severe the risk." (quoting *Toguchi*, 391 F.3d at 1057)).

### 2)   Medical Care

The State Defendants oppose Gardner's motion for leave to assert an Eighth Amendment claim based on the Supervisor Defendants' alleged failure to maintain adequate medical facilities on the ground that Gardner fails adequately to plead facts supporting that any of the Supervisor Defendants except Peters were personally involved in the alleged constitutional violation. (*See* FAC at 12-16, differentiating between factual allegations relating to "medical" and "mental" care; State Defs.' Opp'n at 16, opposing only leave to assert "claims related to mental health care" and citing to the "mental" portion of Garner's FAC allegations; *see also id.* at 29-34, arguing that Gardner fails adequately to allege facts establishing that all of the Supervisor Defendants except Peters were personally involved in the alleged constitutional violations.) For the reasons described in Section V below, the Court finds that Gardner has failed plausibly to allege that any of the defendants other than Peters were personally involved in the alleged constitutional violations. Accordingly, the district judge should grant Gardner's motion to amend to assert an Eighth Amendment claim against Peters only based on her alleged failure to maintain adequate medical facilities.

### b.   COVID Treatment

In the FAC, Gardner seeks to assert an Eighth Amendment claim against the Supervisor Defendants for allegedly "fail[ing] to treat COVID 19[.]" (FAC at 22.) The Court previously dismissed Gardner's claim relating to the State Defendants' alleged failure to treat COVID because "[t]he decision whether to order specific medical tests or use different or preferred therapeutics is a matter of medical judgment that does not, by itself, constitute an Eighth Amendment violation." *Gardner*, 2024 WL 1155381, at *5 (citations omitted). The State

Defendants oppose Gardner's motion to add claims relating to the alleged failure to treat COVID "because [Gardner's] allegations do nothing more than allege a medical disagreement about the propriety of a course of treatment." (State Defs.' Opp'n at 21.)

The Court finds that Gardner has failed adequately to plead facts to establish an Eighth Amendment claim relating to the Supervisor Defendants' alleged failure to treat COVID. Specifically, Gardner alleges that he contracted COVID and was "denied therapeutics," such as "hydroxychloroquine and Invermectin," and "denied by medical to be tested for covid" which caused him to "suffer[] the effects of long covid[.]" (FAC at 23.) As Judge Simon previously explained, "[t]he decision whether to order specific medical tests or use different or preferred therapeutics is a matter of medical judgment that does not, by itself, constitute an Eighth Amendment violation." *Gardner*, 2024 WL 1155381, at *5 (first citing *Estelle v. Gamble*, 429 U.S. 97, 107 (1976); and then citing *Toguchi*, 391 F.3d at 1058). The Court finds that Gardner has failed adequately to plead facts supporting anything more than "a mere difference of medical opinion [which is] insufficient, as a matter of law, to establish deliberate indifference." *Id.* (quoting *Toguchi*, 391 F.3d at 1058).

Accordingly, the district judge should deny Gardner's motion for leave to assert an Eighth Amendment claim based on the Supervisor Defendants' alleged failure to treat COVID.

### c.    Vaccine

In the FAC, Gardner seeks to assert a new Eighth Amendment claim alleging that the COVID Defendants "coerced [Gardner] into taking the [COVID] vaccine." (FAC at 23.) The State Defendants oppose Gardner's motion to add claims related to alleged vaccine coercion on the ground that Gardner's allegations do not satisfy either the objective or subjective prong of the Eighth Amendment analysis. (*See* State Defs.' Opp'n at 23-26.) The State Defendants also argue

that the Public Readiness and Emergency Preparedness ("PREP") Act bars Gardner's claim.[5] (*See id.* at 26-29.)

"The PREP Act expressly states, in relevant part, that 'a covered person shall be immune from suit and liability under Federal and State law with respect to all claims for loss caused by, arising out of, relating to, or resulting from the administration to or the use by an individual of a covered countermeasure.'" *Maney v. Brown*, 91 F.4th 1296, 1302 (9th Cir. 2024) (quoting 42 U.S.C. § 247d-6d(a)(1)). The Secretary of the Department of Health and Human Services ("Secretary") "broadly defined" a covered countermeasure to include "any antiviral, any other drug, any biologic, any diagnostic, any other device, or any vaccine, used to treat, diagnose, cure, prevent, or mitigate COVID-19." *Id.* (quoting Declaration Under the Public Readiness and Emergency Preparedness Act for Medical Countermeasures Against COVID-19, 85 Fed. Reg. 15198, 15201 (Mar. 17, 2020)). Ultimately, in *Maney*, the Ninth Circuit concluded that PREP Act immunity extends to policy-level COVID vaccine prioritization decisions. *Id.* at 1301-02.

Similarly here, the Court finds that the PREP Act bars Gardner's Eighth Amendment claim relating to COVID vaccine decisions. Specifically, Gardner alleges that the COVID Defendants "knowingly used dangerous vaccinations" without "fully inform[ing Gardner] of the risks[.]" (FAC at 24.) Under the PREP Act, Peters is a "covered person[.]" *Jackson v. Surber*, No. 2:22-cv-01832-SB, 2025 WL 712876, at *3 (D. Or. Mar. 5, 2025) (first quoting *Maney*, 91 F.4th at 1300; and then quoting *Maney*, 729 F. Supp. 3d at 1119), *findings and recommendation adopted*, 2024 WL 427009 (D. Or. Sept. 24, 2024); 42 U.S.C. § 247d-6d(i)(2) (defining "covered

---

[5] As further explained below, the Court finds that Gardner has failed adequately to plead facts supporting that any of the COVID Defendants except Peters were personally involved in any of the alleged constitutional violations.

person" to include "a program planner of such countermeasure" and its "official, agent, or employee").

Further, the PREP Act defines a "covered countermeasure" as (1) a "qualified pandemic or epidemic product," (2) a "security countermeasure," (3) a drug, biological product, or device that is authorized for emergency use, or (4) a "respiratory protective device that is approved by the National Institute for Occupational Safety and Health . . . , and that the Secretary determines to be a priority for use during a public health emergency[.]" 42 U.S.C. § 247d-6d(i)(1). The Secretary issued a declaration explaining that a covered countermeasure includes "any antiviral, any other drug, any biologic, any diagnostic, any other device, or any vaccine, used to treat, diagnose, cure, prevent, or mitigate COVID-19," or "any device used in the administration of any such product, and all components and constituent materials of any such product." Declaration Under the Public Readiness and Emergency Preparedness Act for Medical Countermeasures Against COVID-19, 85 Fed. Reg. 15198, 15202 (Mar. 17, 2020). Thus, the COVID vaccine is a "covered countermeasure." *See Jackson*, 2025 WL 712876, at *3 (finding that the COVID vaccine is a covered countermeasure) (citations omitted).

The Court also finds that Gardner's Eighth Amendment claim is "for loss caused by, arising out of, relating to, or resulting from the administration to or the use [of a covered countermeasure] by an individual[.]" *Baghikian v. Providence Health & Servs.*, 715 F. Supp. 3d 1265, 1273 (C.D. Cal. 2024) ("Plaintiffs contend that because the decedent did not provide informed consent prior to the administration of [the COVID countermeasures], the PREP Act does not apply. However, Plaintiffs do not cite a single case to support this position, and the Court is aware of none. Indeed, courts have held that consent is not a requirement for the application of PREP Act immunity.") (simplified); *see also Deborah Fust v. Gilead Scis., Inc.*,

No. 2:23-cv-02853, 2024 WL 732965, at *6 (E.D. Cal. Feb. 21, 2024) (finding that the PREP Act barred the plaintiff's claim "predicated on informed consent about the dangers of [a COVID countermeasure]" and noting that "[s]everal other courts have also found that PREP Act immunity applies against similar claims regarding COVID-19 drugs") (collecting cases).[6]

Accordingly, the PREP Act bars Gardner's Eighth Amendment vaccine claim and the district judge should deny Gardner leave to assert the claim.

### d.    "Forced Masking"

In the FAC, Gardner seeks leave to assert an Eighth Amendment claim against the COVID Defendants for forcing him to wear a mask. (*See* FAC at 16-22.) The Court previously dismissed Gardner's claim relating to masking policies because "[a]ssuming—without deciding—that [Gardner]'s allegations related to the prison's masking policy satisfies the substantial risk of serious harm requirement, [Gardner] fail[ed] to allege that Defendants subjectively were aware of the substantial risk of harm." *Gardner*, 2024 WL 1155381, at *5. The State Defendants argue that the Court should deny Gardner leave to amend to add claims related to masking policies because Gardner's allegations do not satisfy either the objective or subjective prong of the Eighth Amendment analysis. (*See* State Defs.' Opp'n at 17-21.)

For the reasons further explained above, the Court finds that the PREP Act also bars Gardner's "forced masking" claim. Specifically, Peters is a covered person and masks are a covered countermeasure. *See Maney*, 729 F. Supp. 3d at 1119 (finding that Peters is a covered

---

[6] Gardner has not asserted a claim pursuant to the PREP Act's "'sole exception' . . . for 'an exclusive Federal cause of action against a covered person for death or serious physical injury proximately caused by willful misconduct,' which must be filed in the U.S. District Court for the District of Columbia, among other requirements." *Tate v. Costco Wholesale Corp.*, No. 3:23-cv-01399, 2024 WL 4489443, at *2 n.1 (N.D. Cal. Oct. 2, 2024) (quoting 42 U.S.C. §§ 247d-6d(d), (e)).

person); *Shankle v. Heights of Summerlin, LLC*, 574 F. Supp. 3d 820, 826 (D. Nev. 2021) ("Covered countermeasures are drugs, biological products, and devices that are used in response to a pandemic, such as vaccines and masks."). Further, Gardner's claim is for loss caused by, arising out of, relating to, or resulting from the administration to or the use of masks. (*See* FAC at 20, "Due to defendants' mask mandate . . . Plaintiff[] ha[s] suffered from oxygen deprivation, lack of oxygen to brain, causing light headed, muscles, altered blood platelets, and pressure on heart."; *id.*, "Defendants knew that their mask mandates posed a serious risk to Plaintiff[] being infected with COVID-19 or variants, and partly due to defendants' mask mandate, plaintiff[] w[as] stricken with depression, anxiety, fear, mental and emotional breakdowns, and other psychological trauma.")

For these reasons, the PREP Act also bars Gardner's "forced masking" claim. *See Schmidt v. City of Pasadena*, No. 2:21-cv-08769, 2024 WL 3915097, at *13 (C.D. Cal. Aug. 6, 2024) (dismissing the plaintiff's claim based on being "forced to wear a mask for months on end" on the ground that the "[d]efendants [were] immune from this claim under the PREP Act because it is one for loss arising from the provision of a covered COVID countermeasure") (simplified). Accordingly, the district judge should deny Gardner's motion for leave to assert an Eighth Amendment claim based on forced masking.

## IV.    FIRST AMENDMENT

The State Defendants oppose Gardner's motion on the ground that the proposed amendments to his First Amendment claims are futile. (*See* State Defs.' Opp'n at 6-15.)

### A.    Applicable Law

"A person asserting a free exercise claim must show that the government action in question substantially burdens the person's practice of [that person's] religion." *Jones v. Williams*, 791 F.3d 1023, 1031 (9th Cir. 2015). To merit protection under the Free Exercise

PAGE 16 – FINDINGS AND RECOMMENDATION

Clause, "[f]irst, the claimant's proffered belief must be sincerely held; . . . [s]econd, the claim must be rooted in religious belief, not in purely secular philosophical concerns." *Malik v. Brown*, 16 F.3d 330, 333 (9th Cir. 1994) (simplified), *supplemented*, 65 F.3d 148 (9th Cir. 1995).

### B.    Analysis

#### 1.    Religious Services and Practices

In the FAC, Gardner seeks leave to assert a First Amendment claim against the Supervisor Defendants for allegedly violating the "Free Exercise of Religion Clause" by "terminating all religious services and practices for over one year." (FAC at 25.) The State Defendants did not previously move to dismiss Gardner's claim based on the alleged termination of religious services and practices. *See Gardner*, 2023 WL 11022871, at *5 ("Defendants only seek dismissal of Gardner's First Amendment claim based on Defendants' enforcement of a mask mandate."). Now, however, the State Defendants argue that the Court should deny Gardner leave to amend to assert the same claim based on the alleged termination of religious services because "Plaintiff has failed to meet his burden to show the cessation of religious services was not justified by legitimate penological concerns." (State Defs.' Opp'n at 6.) The State Defendants further argue that "[Gardner's] amendment would still be futile because defendants would be entitled to qualified immunity at summary judgment." (*Id.* at 10, citing *Johnson v. Am. Airlines, Inc.*, 834 F.2d 721, 724 (9th Cir. 1996).)

As an initial matter, the Court finds that the State Defendants' arguments will be more appropriately addressed at the summary judgment stage because the State Defendants did not challenge this same claim in their original motion to dismiss. Specifically, if the Court were to adopt the State Defendants' reasoning and deny Gardner leave to amend his complaint, Gardner's original complaint would remain the operative pleading and his First Amendment claim would proceed against Peters in her individual capacity. *See Gardner*, 2023 WL 11022871,

PAGE 17 – FINDINGS AND RECOMMENDATION

at *10 ("If Gardner does not amend his complaint, his First Amendment claim based on the termination of religious services . . . will proceed against . . . Peters in [her] individual capacit[y.]"). As a result, denying Gardner leave to amend on this ground under the current procedural posture would effectively grant the State Defendants judgment on the pleadings based on arguments that the State Defendants failed to raise in their Rule 12 responsive pleading. *See Gardner*, 2024 WL 1155381, at *5 n.3 ("Defendants have not raised a defense of qualified immunity in response to Gardner's claims against Brown and Peters, and the Court expresses no views on the applicability of that defense here."). Thus, the Court finds that the State Defendants' arguments will be more appropriately addressed at the summary judgment stage. *See Neche, LLC v. Allied Ins. Co. of Am.*, No. 2:19-cv-01016, 2020 WL 870224, at *2 (D. Nev. Feb. 21, 2020) ("The Court finds that the defendants' futility arguments would be better addressed through a motion . . . for summary judgment, given the new claim's similarity to plaintiff's original claims."); *Idearc Media, LLC v. Palmisano & Assocs., P.C.*, No. 2:09-cv-02147, 2012 WL 1246735, at *3 n.1 (D. Ariz. Apr. 13, 2012) ("In this case, no motions for summary judgment have been filed, the parties have not had the opportunity to engage in discovery, and the facts underlying [the relevant issue] are disputed. It would not be appropriate for the Court to determine summary judgment at this stage of the proceedings."); *see also Spriestersbach v. Hawaii*, No. 1:21-cv-00456, 2024 WL 5170926, at *7 (D. Haw. Dec. 19, 2024) (rejecting the defendant's argument that the plaintiff's claims are futile on the ground that the defendant is entitled to qualified immunity because "[t]he [defendant]'s arguments are more appropriate in a motion for summary judgment").

///

///

Accordingly, the district judge should grant Gardner's motion to amend to assert a First Amendment claim based on "terminating all religious services and practices for over one year." (FAC at 25.)

### 2.    Discrimination[7]

In the FAC, Gardner seeks to assert a First Amendment claim against the COVID Defendants for allegedly violating Gardner's "right to be free from religious, viewpoint, and political discrimination" by "creating then enforcing government mask mandates." (FAC at 28.) The Court previously dismissed Gardner's claims relating to alleged discrimination based on mandatory masking because "the act of wearing a mask is not inherently expressive conduct." *Gardner*, 2023 WL 11022871, at *7 (citations omitted). The State Defendants argue that the Court should deny Gardner leave to amend to add claims related to the alleged discrimination resulting from mandatory masking because Gardner's allegations fail to cure the Court's previously identified pleading deficiencies. (*See* State Defs.' Opp'n at 13-14.)

The Court agrees with the State Defendants that Gardner has failed to cure the pleading deficiencies that the Court previously identified. Specifically, "to the extent Gardner argues that Defendants forced him to engage in expressive conduct with which he disagrees in violation of the First Amendment, the Court concludes that the act of wearing a mask is not inherently expressive conduct." *Gardner*, 2023 WL 11022871, at *7 (citations omitted).

///

---

[7] To the extent Gardner's single reference to the Fourteenth Amendment could be construed to assert a Fourteenth Amendment discrimination claim based on the same factual allegations, the Court recommends that the district judge deny Gardner leave to amend to assert that claim because he fails to cure the pleading deficiencies the Court previously identified. Specifically, "Gardner has not alleged that Defendants required him to comply with a mask mandate *because* of his religion, viewpoint, or political beliefs." *Gardner*, 2023 WL 11022871, at *7 (citations omitted).

Accordingly, the district judge should deny Gardner's motion for leave to amend to assert a First Amendment discrimination claim based on the COVID Defendants' mandatory masking policy.

### 3.    Retaliation

Gardner seeks leave to assert a new First Amendment claim against Golden, Scarr, Pedro, and Neistadt for allegedly "retaliat[ing] against [Gardner] . . . for exercising [his] right to access the courts." (FAC at 31.) The State Defendants oppose Gardner's motion to add claims related to the alleged retaliation on the ground that the statute of limitations bars those claims. (*See* State Defs.' Opp'n at 14-15.)

The Court agrees that Gardner's claim is untimely. Specifically, Gardner alleges that "[o]n May 31, 2022, Villers conducted an extensive audit on . . . Gardner's legal thumb drive[] then provided the information stored on the[] thumb drive[] to the attorney general of the State of Oregon." (FAC at 31.) Gardner further alleges that on June 1, 2022, Villers confiscated his thumb drive. (*See id.*) At a subsequent disciplinary hearing, Gardner was "convicted . . . of violating Rule 1.26 (unauthorized use of information system II)," and on June 15, 2022, Scarr affirmed that conviction on administrative appeal. (*Id.*) Gardner alleges that "Villers issued . . . Gardner a misconduct report, Golden convicted . . . Gardner of Villers['] misconduct report, and Scarr upheld Golden[']s conviction and imposed sanctions against . . . Gardner, in retaliation for . . . Gardner exercising [his] right to access the courts[.]" (*Id.* at 33.)

"[T]he statute of limitations in a [Section] 1983 suit is the same as provided under state law for tort claims alleging personal-injury[.]" *Addison v. City of Baker City*, 758 F. App'x 582, 585 (9th Cir. 2018) (quoting *Wallace v. Kato*, 549 U.S. 384, 387 (2007)). "The statute of limitations for personal injury claims under Oregon law is two years." *Id.* (citing OR. REV. STAT. § 12.110(1)). "Accrual is the date on which the statute of limitations begins to run[.]" *Soto v.*

*Sweetman*, 882 F.3d 865, 870 (9th Cir. 2018) (simplified). "Although state law determines the statute of limitations for [Section] 1983 claims, federal law governs when a claim accrues." *Id.* (citing *Wallace*, 549 U.S. at 388). "Under federal law, a claim accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action." *Id.* (simplified).

Gardner bases his claim on conduct that allegedly occurred on or before June 15, 2022. (*See* FAC at 31, alleging that Scarr affirmed Gardner's relevant discipline on June 15, 2022.) The Court finds that Gardner knew or should have known of his claim on or before June 15, 2022. *See Evans v. Nelson*, No. 2:19-cv-01210-MK, 2022 WL 20335877, at *9 (D. Or. Sept. 7, 2022) (finding that the statute of limitations barred the plaintiff's claims because "Plaintiff should have known about his injury at the time the discipline took place") (citation omitted), *findings and recommendation adopted*, 2023 WL 4490515 (D. Or. July 12, 2023). Thus, the statute of limitations bars Gardner's claim because more than two years elapsed before he first alleged the claim in his November 1, 2024, proposed amended complaint. (*See generally* FAC.)

Further, the Court finds that Gardner's claims do not relate back to his original complaint. "Under [Rule] 15(c), an amended complaint that is otherwise barred by the statute of limitations could be deemed timely if it 'relates back to the date of the original pleading' in certain circumstances." *Moore v. Thurnau*, No. 2:21-cv-00483-YY, 2024 WL 5340463, at *3 (D. Or. Oct. 3, 2024), *findings and recommendation adopted*, 2025 WL 239093 (D. Or. Jan. 17, 2025). "Under Rule 15(c)(1)(C), the date of an amended complaint that 'changes the party or the naming of the party against whom the claim is asserted' relates back if three conditions are satisfied." *Gilstrap v. Four Handy Ltd.*, No. 3:20-cv-02285-SI, 2021 WL 5040537, at *3 (D. Or. Oct. 29, 2021) (quoting FED. R. CIV. P. 15(c)(1)(C)). "First, the amended complaint must assert claims that arise out of the 'same conduct, transaction, or occurrence' set out in the original

pleading." *Id.* (citation omitted). "Second, the party named in the amended complaint must have 'received notice of the action' within the Rule 4(m) service period such that it would 'not be prejudiced in defending on the merits.'" *Id.* "Third, the party either 'knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.'" *Id.* (citation omitted).

In the original complaint, Gardner did not name any of the relevant defendants or refer to any allegedly retaliatory acts relating to his access to the courts at issue in this claim. (*See generally* Compl.) Thus, the Court finds that Gardner's claim does not relate back to his original complaint and the statute of limitations bars Gardner's First Amendment retaliation claim. *See Holloway v. Clackamas River Water*, No. 20-35888, 2022 WL 3227723, at *1 (9th Cir. Aug. 10, 2022) ("[The district court] properly rejected [the plaintiff]'s contention that the claim relates back to the original complaint and therefore is timely because the original complaint made no reference to the conduct on which the claim is based.") (citation omitted).

Accordingly, the district judge should deny Gardner's motion to amend to assert a First Amendment retaliation claim because the statute of limitations bars that claim.

## V.    PERSONAL INVOLVEMENT

The State Defendants oppose Gardner's motion on the ground that Gardner fails sufficiently to allege facts establishing that any of the Supervisor Defendants were personally involved in the alleged constitutional violations. (*See* State Defs.' Opp'n at 29-34.)

As the Court previously explained, "[a] supervisor may be held liable under Section 1983 based on 'either (1) [the supervisor's] personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Gardner*, 2023 WL 11022871, at *4 (quoting *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011)). A supervisor need not be physically present or "directly and

personally involved in the same way as are the individual officers who are on the scene inflicting constitutional injury." *Id.* (quoting *Starr*, 652 F.3d at 1205).

For the reasons explained above, the Court finds that Gardner fails to state a claim upon which relief can be granted except for the following three claims: (1) an Eighth Amendment claim against the Supervisor Defendants based on allegedly confining AICs for excessive periods of time to poorly ventilated spaces without the means to practice social distancing; (2) an Eighth Amendment claim against the Supervisor Defendants based on failing to maintain adequate medical facilities with qualified staff; and (3) a First Amendment claim against the COVID Defendants based on terminating all religious services and practices for over one year. Thus, the Court analyzes the sufficiency of Gardner's allegations relating to the relevant defendants' alleged personal involvement only with respect to those three claims.

Judge Simon previously held that Gardner's "alleg[ations] that Peters was responsible for overseeing the Oregon Department of Corrections and was responsible for creating and enforcing policies . . . plausibly link[ed] Peters to the alleged constitutional violations because the Complaint allege[d] that she was personally involved in creating the policies that resulted in the alleged constitutional violation." *Gardner*, 2024 WL 1155381, at *6. With respect to Brown, however, Judge Simon held that "Gardner [did] not allege[] that Brown ha[d] either the requisite personal involvement in the alleged constitutional deprivation or that any specific conduct by Brown [wa]s causally connected to the alleged Eighth Amendment violation" because Gardner "d[id] not allege that Brown was personally involved in the planning or implementation of the COVID-19 policies or procedures for Oregon's correctional institutions . . . [or] that Brown was even aware of those policies." *Id.*

///

With respect to Gardner's remaining claims, the Court finds that Gardner has failed adequately to plead specific facts plausibly linking any of the defendants to the alleged constitutional violations. Specifically, Gardner fails to allege specific facts regarding what each defendant allegedly did or did not do to violate his constitutional rights. Instead, Gardner identifies most of the defendants by their name and role,[8] identifies the relevant defendants to each claim, and then generally refers to "Defendants" in his factual allegations. (*See, e.g.*, FAC at 8-10, identifying the Supervisor Defendants by name in the claim's heading but referring only to "Defendants" in the factual allegations.)

In the original complaint, Gardner similarly identified the three defendants by their name and role, and generally asserted each of his factual allegations against all three defendants. (*See generally* Compl.) Judge Simon held that Gardner's general allegations relating to ODOC policies and procedures "plausibly link[ed] Peters to the alleged constitutional violations because the Complaint allege[d] that she was personally involved in creating the policies that resulted in the alleged constitutional violation." *Gardner*, 2024 WL 1155381, at *6. Gardner's allegations plausibly linked Peters to the alleged constitutional violations because she was the only defendant allegedly involved in the creation of ODOC's allegedly unconstitutional policies. *Cf. id.* ("[T]he Court finds significant that the Complaint does not allege that Brown was personally involved in the planning or implementation of the COVID-19 policies or procedures for Oregon's correctional institutions. The Complaint does not allege that Brown was even aware of those policies.") Therefore, the Court could reasonably infer that the factual allegations relating to ODOC's creation and implementation of COVID policies related to Peters. *See id.* ("The

---

[8] Gardner fails to identify Jeske's role or involvement in ODOC or EOCI. (*See generally* FAC.)

Complaint alleges that Peters was responsible for overseeing the Oregon Department of Corrections and was responsible for creating and enforcing policies. In contrast to the allegations related to Brown, these allegations plausibly link Peters to the alleged constitutional violations because the Complaint alleges that she was personally involved in creating the policies that resulted in the alleged constitutional violation.").

In the FAC, however, the Court can no longer reasonably infer that Gardner's factual allegations relate to any specific individual because Gardner identifies ten ODOC officials, five of which he vaguely alleges are responsible for overseeing and enforcing ODOC policy. (*See* FAC at 3-4, alleging Peters "was responsible for overseeing ODOC, and enforcing policies," and that Steward, Gower, Persson, and Bugher are each "in charge of overseeing ODOC policy and its enforcement.") Gardner "must allege more than generic and conclusory allegations demonstrating that 'Defendants' collectively engaged in [unconstitutional conduct] and allege with at least some degree of specificity the acts which each defendant is alleged to have engaged in which support [his] claims." *McKeon v. Cent. Valley Cmty. Sports Found.*, No. 1:18-cv-00358, 2018 WL 6436256, at *5 (E.D. Cal. Dec. 7, 2018) (citations omitted). Therefore, the Court finds that Gardner fails to state a claim against any of the defendants except Peters because the FAC "lumps defendants together and fails to adequately distinguish . . . alleged wrongs among defendants[.]" *de Jaray v. Lattice Semiconductor Corp.*, No. 3:19-cv-00068-SI, 2023 WL 3495767, at *4 (D. Or. May 17, 2023) (quoting *McKeon*, 2018 WL 6436256, at *5).

In light of Judge Simon's previous holding and the State Defendants' lack of opposition relating to Peters on personal involvement grounds, the Court recommends that the district judge grant Gardner's motion for leave to assert his viable claims against Peters, but otherwise deny his motion for leave to assert those claims against the other defendants.

## VI.    UNDER COLOR OF STATE LAW[9]

"To make out a cause of action under [S]ection 1983, plaintiffs must plead that (1) the

defendants acting under color of state law (2) deprived plaintiffs of rights secured by the

Constitution or federal statutes." *Gibson v. United States*, 781 F.2d 1334, 1338 (9th Cir. 1986)

(citing *Smith v. Cremins*, 308 F.2d 187, 190 (9th Cir. 1962)). "[T]o state a claim for relief under

[Section] 1983, the plaintiff must allege that the defendant was acting under color of state law."

*Cox v. Cox*, No. 6:23-cv-01744-MK, 2024 WL 68356, at *2 (D. Or. Jan. 5, 2024) (citing *Gibson*,

781 F.2d at 1338). "Generally, private parties are not acting under color of state law." *Id.* (citing

*Price v. Hawaii*, 939 F.2d 702, 707-08 (9th Cir. 1991)).

Gardner does not allege that Psaki (a former White House press secretary), Reid (a

television host), Maddow (a television host), or Dr. Fauci were acting under the color of state

law. *See Jefferson v. Baylor Scott & White Hosp.*, No. 3:23-cv-01817, 2023 WL 7356777, at *3

(N.D. Tx. Sept. 29, 2023) ("Plaintiffs' bare assertions against Dr. Fauci, a federal official acting

under color of federal law, are not subject to suit under [Section] 1983."), *findings and*

*recommendation adopted*, 2023 WL 7360902 (N.D. Tex. Nov. 6, 2023); *Benshoof v. Fauci*, No.

2:22-cv-01281, 2022 WL 4465782, at *2 (W.D. Wash. Sept. 26, 2022) ("[The plaintiff] cannot

assert his Section 1983 claim against federal or private actors."). To the extent that the FAC

---

[9] Gardner's FAC remains subject to screening and sua sponte dismissal under 28 U.S.C. § 1915(e)(2) because the Court granted Gardner leave to proceed IFP. *See Smith v. Counts*, No. 2:20-cv-02441, 2022 WL 705890, at *1 n.2 (E.D. Cal. Mar. 9, 2022) ("Because [the self-represented] plaintiff is proceeding [IFP], the second amended complaint is subject to screening under 28 U.S.C. § 1915(e)."); *Moses v. Gardner*, No. 17-5497, 2017 WL 9251805, at *2 (6th Cir. Nov. 9, 2017) ("Because the district court granted [the self-represented plaintiff] leave to proceed [IFP], her amended complaint was therefore subject to screening and sua sponte dismissal pursuant to § 1915(e)(2)."); *see also Outley v. Moir*, No. 2:19-cv-00019, 2021 WL 2228575, at *3 (D. Ariz. Feb. 8, 2021) (screening a self-represented litigant's proposed amended complaint relating to new claims against new defendants that had not appeared yet in response to the plaintiff's motion to amend), *findings and recommendation adopted as modified*, 2021 WL 2024926 (D. Ariz. May 21, 2021).

could be construed to assert *Bivens* claims against Psaki and Dr. Fauci as federal officials, the Court finds that Gardner fails to state a cognizable claim. *See Lau v. Fauci*, No. 2:22-cv-00436, 2024 WL 2053126, at *5 (N.D.N.Y. Mar. 28, 2024) (rejecting the plaintiff's *Bivens* claim against Dr. Fauci because "[t]he Supreme Court has rejected extending *Bivens* to far more contexts than it does apply, . . . and the issues presented by this case – involving transportation mask mandates in the midst of a global pandemic are 'novel ones, unlike any in which the Supreme Court has previously implied a cause of action under the Constitution'") (simplified), *findings and recommendation adopted*, 2024 WL 1714559 (N.D.N.Y. Apr. 22, 2024); *Jensen v. Biden*, No. 4:21-cv-05119, 2021 WL 10280395, at *5 (E.D. Wash. Nov. 19, 2021) (dismissing *Bivens* claims against Dr. Fauci and others based on the defendants allegedly "spreading misinformation about COVID-19 and its available treatments" because "*Bivens* implied causes of action are available under a very limited set of circumstances, none of which are present here").

Accordingly, the Court finds that Gardner fails to state a claim upon which relief can be granted against Psaki, Reid, Maddow, and Dr. Fauci, and the district judge should dismiss those defendants.

## VII.    CONCLUSION

For the reasons discussed above, the Court finds that Gardner has failed to state a claim against any of the defendants except Peters. Accordingly, the district judge should grant Gardner's motion for leave to amend his complaint to assert only claims against Peters.

///

///

///

///

///

## CONCLUSION

For the reasons stated, the Court recommends that the district judge GRANT IN PART and DENY IN PART Gardner's motion for leave to file an amended complaint (ECF No. 67). Specifically, the Court recommends that the district judge grant Gardner's motion for leave to amend to assert the following three claims against Peters in her individual capacity:

(1)    an Eighth Amendment claim based on allegedly confining AICs for excessive periods of time to poorly ventilated spaces without the means to practice social distancing;

(2)    an Eighth Amendment claim based on failing to maintain adequate medical facilities with qualified staff; and

(3)    a First Amendment claim based on terminating all religious services and practices for over one year.

## SCHEDULING ORDER

The Court will refer its Findings and Recommendation to a district judge. Objections, if any, are due within fourteen (14) days from service of the Findings and Recommendation. If no objections are filed, the Findings and Recommendation will go under advisement on that date. If objections are filed, a response is due within fourteen (14) days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

DATED this 24th day of June, 2025.

*Stacie F. Beckerman*

HON. STACIE F. BECKERMAN
United States Magistrate Judge

PAGE 28 – FINDINGS AND RECOMMENDATION